**V. A. CARMICHAEL and Marcia Carmichael, Appellants and Cross-Appellees,**

v.

**IOWA STATE HIGHWAY COMMISSION et al., Appellees and Cross-Appellants.**

No. 2–56235.

Supreme Court of Iowa.

June 26, 1974.

Marion R. Neely, Iowa City, for appellants-cross-appellees.

Nolan, Lucas & Nolan, Iowa City, and Glenn M. Bradley, Sigourney, for appellees-cross-appellants.

Heard before MOORE, C. J., and MASON, REES, REYNOLDSON and McCORMICK, JJ.

REYNOLDSON, Justice.

This is an unfortunate lawyer-client controversy over fees in an ancient condemnation case.

September 23, 1963, a portion of Carmichaels' land was condemned by the Iowa State Highway Commission. They were awarded $3075.

Shortly thereafter Carmichaels consulted attorney D. C. Nolan who agreed to prosecute an appeal. Mr. Nolan by later professional statement said the oral agreement as to fees "was * * * that I would receive and whoever associated with me in the trial of the case, one-third of any increase over and above the amount awarded by the condemnation commission to the Carmichaels."

Later, lawyers Glenn M. Bradley and John Nolan also became associated with D. C. Nolan in the litigation.

October 28, 1966, upon trial of the appeal in district court, the jury returned a verdict for $13,000.

A subsequent district court order on April 17, 1967 provided for payment of the verdict (less the condemnation commission's award already paid), interest, and costs, including an amount for attorney fees fixed in the sum of $3870.94.

Mr. Carmichael testified that in a subsequent telephone conversation with D. C. Nolan, the latter said, "I have good news for you, the State, the Court has allowed the attorney fees too." This testimony was not directly refuted.

Thereafter the Iowa State Highway Commission brought the case to this court, successfully claiming the district court had no jurisdiction to hear the appeal at that level because no notice of appeal had been served on the mortgagee, Prudential Life Insurance Company of America. See Carmichael v. Iowa State Highway Commission, 156 N.W.2d 332 (Iowa 1968).

Attorney Bradley testified in this proceeding that following the adverse Supreme Court decision he told Mr. Carmichael " * * * there were two possibilities, that he might recover from in this case and I said one possibility is that would be [sic] to file a malpractice suit against Mr. Nolan, if you can convince somebody he did not do his duty as he should have as an attorney; the second possibility would be by way of going through the Legislature."

The Carmichaels consulted another lawyer, but eventually pursued legislative relief. Attorneys D. C. Nolan and Bradley assisted in the legislative action. In addition, Carmichaels retained a Des Moines attorney who lobbied for the necessary enactment and submitted a bill for services in the sum of $1922.17. These efforts were ultimately successful. See 1972 Second Regular Session of the 64th General Assembly, Chapter 1120, Section 1, now § 589.27, The Code, 1973.

This legislation resulted in an August 23, 1972 court order reinstating the verdict and costs. The Iowa State Highway Commission caused warrants (checks) to be issued to the following persons in the indicated amounts: V. A. Carmichael and Marcia A. Carmichael, $9925 (excess of verdict over condemnation commission award) and $4472.68 (interest); D. C. Nolan, $3870.94 (attorney fee) and $1628.55 (interest); Clerk of Court, $106.51 (balance of court costs). With the exception of the warrant for costs, all these warrants were delivered by the clerk to the lawyers. Nothing in this record explains the Commission's failure to issue the warrant for costs, including the sum for attorney fees, directly to the clerk as required by § 472.-31, The Code.

At the conclusion of the district court trial these lawyers had caused a docket entry to be made of an attorneys' lien. See § 610.18(4), The Code. Mr. Carmichael testified he had no knowledge of this until after the district court award had been reinstated in 1972, when he requested Mr. Bradley to draw an assignment of the "judgment" to a Des Moines bank and the latter drafted the assignment subject to the lien for fees.

December 29, 1972 attorneys D. C. Nolan and Bradley filed an "Application" in the above captioned cause in district court, claiming one-third of the warrants for $9925 and $4472.68, and alleging, "The aforesaid attorneys have filed an attorneys' lien upon the docket for said attorneys' fees and are holding said warrants in payment thereof." They requested the court to require Carmichaels to endorse the warrants and to pay the applicants one-third of the amounts represented by these instruments, or the sum of $4799.23, in addition to the fees awarded for their district court services, already in their possession.

At the application hearing, Carmichaels contended the court-awarded fees of $3870.94 were more than one-third of the $9925 additional amount allowed for the

land taken and therefore the attorneys were not entitled to any further sum.

The district court concluded the attorney-applicants had established a contingent fee contract of "one-third the increase over the condemnation award [of] $3075," the attorneys were "entitled to fees for services performed after trial in District Court," but that a fee of $4799.23 would be excessive and $3325 "is a reasonable fee for the attorneys for services rendered after trial in District Court." The ruling directed Carmichaels to endorse the warrants, pay the applicants $3325 with interest at five percent from September 6, 1972 and pay the costs of the application.

It is from this ruling Carmichaels appeal. The lawyer-applicants cross-appeal for an allowance of expenses in the sum of $910, alleged to have been incurred by them in the process of handling the cause. We affirm in part, reverse in part, and remand.

I. At the threshold it should be noted there is no issue concerning the procedure employed by the lawyer-applicants to litigate their fees and to enforce their alleged lien in this condemnation case. See, however, In re Lamm's Will, 252 Iowa 1045, 109 N.W.2d 708 (1961); Kinkead v. Peet, 164 Iowa 65, 145 N.W. 313 (1914); 26 Iowa L.Rev. 840, 852–53 (1941).

■ In this situation, in which lawyers seek enforcement of a charging lien against funds paid into court, and in absence of any procedural objections, we hold the matter sounds in equity. See Hubbard v. Ellithorpe, 135 Iowa 259, 112 N.W. 796 (1907); Note, Nature of the Attorney's Lien in Iowa, 26 Iowa L.Rev., supra at 852–53; 7 Am.Jur.2d, Attorneys at Law § 303, p. 215; 7 C.J.S. Attorney and Client § 236, pp. 1203–1204, § 238(b), p. 1205. Our review is de novo. Rule 334, Rules of Civil Procedure.

■ As in all other cases, the burden is on the lawyers to show a contract was entered into, there was performance on their part, and that they have not been paid. Lawrence v. Tschirgi, 244 Iowa 386, 57 N. W.2d 46 (1953); 7 Am.Jur.2d, Attorneys at Law § 266, pp. 195–96.

■ II. There is nothing about a condemnation case which prohibits an attorney and client from contracting for the attorney's services on a contingent basis. See In Re Condemnation of Lands, 261 Iowa 146, 153–154, 153 N.W.2d 706, 710–711 (1967); 7 Nichols on Eminent Domain § 15.02, p. 15–4. We agree with trial court there was such an agreement in this case, but not with the court's findings as to the contract terms.

Trial court apparently concluded the agreement was for the court-fixed attorney fees plus one-third of the amount by which the district court jury verdict exceeded the award made by the condemnation commission. This latter sum was reduced by the court as excessive. On the power of courts to regulate the practice of law as including the power to govern fees, see American Trial Lawyers Ass'n v. New Jersey S. Ct., 126 N.J.Super. 577, 316 A.2d 19 (1974); Gair v. Peck, 6 N.Y.2d 97, 188 N.Y.S.2d 491, 160 N.E.2d 43 (1959), appeal dismissed and cert. denied, 361 U.S. 374, 80 S.Ct. 401, 4 L.Ed.2d 380 (1960); Herro, McAndrews & Porter, S. C. v. Gerhardt, 62 Wis.2d 179, 214 N.W.2d 401 (1974); Annot., 77 A.L.R.2d 411 (1961).

We find the oral contract ambiguous and obscure, there being no definition of the "excess" on which the contingent fee was to be computed. A successful appellant landowner is awarded a greater sum for the property condemned. He (not his attorney) is also awarded an amount sufficient to reasonably compensate his lawyer for services at the district court level. Section 472.33, The Code; In Re Condemnation of Lands, supra, 261 Iowa at 153, 153 N.W.2d at 710; Nelson v. Iowa State Highway Commission, 253 Iowa 1248, 1257, 115 N.W.2d 695, 700 (1962).

Here two possible interpretations which might be given the language used in the

oral agreement are that arrived at by the court (court-fixed fees plus one-third), and that advanced by the Carmichaels (one-third less court-fixed fees). A third construction would allow applicants one-third of the total increase measured by the additional sums received by the landowners, including allowance for the land and for attorney fees.

■ As in all other contract situations, we do not attempt to follow the secret thoughts of the parties, but seek to ascertain their intent as manifested objectively in the language used in the agreement. Hamilton v. Wosepka, 261 Iowa 299, 305, 154 N.W.2d 164, 167 (1967) ; Rotterman v. General Mills, 245 Iowa 229, 234, 61 N.W. 2d 718, 722 (1953).

■ A second rule applicable here finds expression in 17 Am.Jur.2d, Contracts § 252, p. 645 :

"The language employed by parties to a contract should receive a fair, reasonable, and practical construction, since it is to be presumed that the parties contracted with reference to fair, reasonable, and practical results. Where the language of a contract is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a fair, rational, and probable contract must be preferred."

See Freese v. Town of Alburnett, 255 Iowa 1264, 1268, 125 N.W.2d 790, 793 (1964).

■ We do not agree with Carmichaels that the trial court attempted to award the attorney fees on a quantum meruit basis. Although these lawyers, on that basis, might well receive more than their contract provided, it is well established where the amount of fees is determined by a contingent agreement, there can be no recovery on quantum meruit. National Bank of Topton v. Holland, 190 Pa.Super. 501, 503, 154 A.2d 252, 253 (1959) ; 7 Am.Jur.2d, Attorneys at Law § 232, pp. 181–82.

■ In the absence of an express provision to the contrary, an attorney-client contingent fee contract covers services rendered by the attorney in prosecuting or defending an appeal from a judgment in the case for which he was employed, and, therefore, the attorney is not entitled to additional compensation for such services. Salinger v. Mason, 194 F. 382 (8 Cir. 1912) ; Pocius v. Halvorsen, 30 Ill.2d 73, 195 N.E.2d 137 (1963) ; Annot., 13 A.L.R. 3d 673, 677–81 (1967).

■ In the case *sub judice* adoption of the Carmichael construction of the contract would require finding the lawyers accepted employment on a contingent fee basis but would be required to reimburse Carmichaels if the fee fixed by the court exceeded one-third of the additional sum received for the land. Of course, the lawyer-client contract is ignored by the district court in establishing fees in a condemnation appeal. In Re Condemnation of Lands, supra, 261 Iowa at 154, 153 N.W.2d at 711. We are not persuaded Carmichaels' interpretation of the contract comports with the intention of the parties or with the rule permitting the construction of an ambiguous contract to arrive at a fair and reasonable result.

Neither are we convinced this obscure contingency contract should be given the interpretation advanced by the lawyer-applicants. If attorney D. C. Nolan intended, if successful, to receive one-third of any increase in the sum allowed for the land, and all of the amount awarded to the Carmichaels for their attorney fees, he failed to so inform these clients at the time the contract was made. See Lawrence v. Tschirgi, supra. If the agreement was as

the lawyers contend, there was no reason for attorney Nolan to have told Mr. Carmichael the allowance of fees by the court was "good news for you."

We believe this employment arrangement, interpreted to make a fair, rational and probable contract under the above-quoted rule, requires the lawyers to accept as a total fee one-third of all sums received by Carmichaels over and above the $3075 they had when these attorneys were retained. This includes interest on the amounts recovered. The total sum thus received through the efforts of these lawyers was $19,897.14. The contingent fee is $6632.38. Two checks totaling $5499.49 have already been paid to attorney D. C. Nolan. The attorneys should be directed to promptly return to the district court clerk's office the two checks payable to Carmichaels which they hold, in exchange for a remittance for the balance of the fee, $1132.89, and applicants' lien shall be established in that amount. No additional interest shall be charged either party.

The above result does not, in our opinion, violate the ethical rule against dividing legal fees with a non-lawyer. See EC 3–8, Iowa Code of Professional Responsibility for Lawyers. These lawyer-applicants were retained on a contingent fee which they did not agree to share with anyone except each other. The allowance of attorney fees in a judgment gives the attorneys no interest and ownership in the judgment to the extent of the amount of the fee allowed, but the judgment in its entirety is the property of the client. 7 C.J. S. Attorney and Client § 163, pp. 1020–1021. The award for fees is for the client, not the attorney, and they, in this situation, are free to make their own fee contract. In Re Condemnation of Lands, supra, 261 Iowa at 153–154, 153 N.W.2d at 710–711. See, however, § 625.24 and § 633.202, The Code, for statutory prohibitions pertinent to other situations.

III. We have considered the lawyer-applicants' cross-appeal for expenses in the additional amount of $910. Of this sum, $600 is claimed for the purpose of paying expert valuation witnesses who testified in the trial of the appeal. These witnesses were unpaid. In a professional statement to the district court Mr. Nolan said the applicants felt responsible for compensating them. There was neither proof of a contract for services nor proof of the reasonable value of the services rendered by these witnesses. The sum of $200 per witness was apparently Mr. Nolan's estimate of a "minimum" fee.

While the lawyer-applicants may well feel some moral obligation to assist these witnesses in recovering fees for testifying, the record does not disclose they assumed any legal obligation. For the ethical considerations in such arrangements, see Canon 42 of our prior Canons of Professional Ethics and EC 5–8, DR 5–103(B), Iowa Code of Professional Responsibility for Lawyers. We hold these witness fees are not recoverable from the Carmichaels by the lawyer-applicants. The question whether the witnesses may recover from the Carmichaels is not before us.

Much of the balance of the $910 claimed was for travel related to the prior appeal to this court, the corrective legislation, and the threatened malpractice case. We are not persuaded such expenses are an obligation of the Carmichaels under the contingent fee contract as we construe it.

We affirm trial court's denial of these expenses.

IV. We cannot release this appeal without noting the lawyer-applicants are responsible for the ambiguous and obscure nature of their employment agreement. While the late Senator D. C. Nolan in 1963 and years prior thereto was devot-

ing much time to dedicated public service for which he deserves commendation, no lawyer retained on a contingent fee basis should be too busy to prepare a written instrument precisely detailing all terms of the employment contract. This common-sense rule has found its way into the Code of Professional Responsibility for Lawyers:

"EC 2–19 As soon as feasible after a lawyer has been employed, it is desirable that he reach a clear agreement with his client as to the basis of the fee charges to be made. Such a course will not only prevent later misunderstanding but will also work for good relations between the lawyer and the client. It is usually beneficial to reduce to writing the understanding of the parties regarding the fee, particularly when it is contingent. A lawyer should be mindful that many persons who desire to employ him may have had little or no experience with fee charges of lawyers, and for this reason he should explain fully to such persons the reasons for the particular fee arrangement he proposes."

From the same Code, the following is pertinent:

"EC 2–23 A lawyer should be zealous in his efforts to avoid controversies over fees with clients and should attempt to resolve amicably any differences on the subject. He should not sue a client for a fee unless necessary to prevent fraud or gross imposition by the client."

Because we hold the lawyer-applicants responsible for the employment contract's uncertain nature, which in turn generated this litigation, we impose on them the costs below and here.

Affirmed in part, reversed in part, and remanded for decree in conformance with this decision.

Affirmed in part, reversed in part, and remanded.