STATE EX REL. Anne J. TARNEY, Petitioner,

v.

Francis X. McCORMACK, Milwaukee County Circuit Court Clerk, Edward S. Vakos, Milwaukee County Circuit Court Calendar Clerk, Honorable John F. Foley, Chief Judge of the Milwaukee County Circuit Court, Family Division, Branch 7, Honorable Christ T. Seraphim, Milwaukee County Circuit Court, Family Division, Branch 11 and Richard Tarney, Respondents.

Supreme Court

No. 79–1786–W. *Argued September 30, 1980.—*
*Decided November 25, 1980.*

(Reversing Court of Appeals opinion not submitted for publication.)
(Also reported in 298 N.W.2d 552.)

For the petitioner there was oral argument by *Robert E. Cook* of *Cook & Franke, S.C.*, Milwaukee.

For respondent Richard Tarney there was oral argument by *Milton Padway* of *Padway & Padway*, Milwaukee.

Other respondents represented by *F. Joseph Sensenbrenner, Jr.*, assistant attorney general.

SHIRLEY S. ABRAHAMSON, J.   This is a review of the court of appeals' denial of a petition for issuance of a supervisory writ[1] to compel the appropriate offi-

---

[1] Rule 809.51, Stats., provides for supervisory writs as follows:

"(1)  A person may request the court to exercise its supervisory jurisdiction over a court and the judge presiding therein or other person or body by filing a petition and supporting memorandum. The petitioner shall name as respondents the court and judge or other person or body and all other parties in the action or proceeding.  The petition must contain:

cials of the circuit courts for Milwaukee county to honor petitioner's request for substitution of a judge pursuant to sec. 801.58, Stats. We reverse the decision and grant the petition.

Anne Tarney, the petitioner requesting substitution of a judge, asserts that the respondents, namely Francis X. McCormack, the clerk of circuit court for Milwaukee county, Edward S. Vakos, calendar clerk of circuit court for Milwaukee county, Judge Christ Seraphim, circuit judge assigned to the Tarney case, and Judge John F. Foley, chief judge of the family division of the circuit court for Milwaukee county, unlawfully failed to honor her request for substitution. The respondents argue that the petition be denied on two grounds: First, sec. 801.58, Stats., allowing substitution of a judge, does not apply to a proceeding to modify a divorce judgment providing alimony and support payments; and second, petitioner's request for substitution was not filed timely.

The procedure for filing a request for a substitution of the judge assigned to the case in a civil action or proceeding is set forth in sec. 801.58, Stats. Sec. 801.58 (1), Stats., requires that a written request must be filed pre-

"(a) A statement of the issues presented by the controversy;

"(b) A statement of the facts necessary to an understanding of the issues;

"(c) The relief sought; and

"(d) The reasons why the court should take jurisdiction.

"(2) The court may deny the petition ex parte or may order the respondents to file a response with a supporting memorandum, if any, and may order oral argument on the merits of the petition. The respondents shall respond with supporting memoranda within 10 days of service of the order. A respondent may file a letter stating that he or she does not intend to file a response, but the petition is not thereby admitted.

"(3) The court, upon a consideration of the petition, responses, supporting memoranda and argument, may grant or deny the petition or order such additional proceedings as it considers appropriate."

ceding the hearing of any preliminary contested matter and within a time period specified in sec. 801.58, Stats. The statutory provisions relevant to the instant case are as follows:

"**801.58 Substitution of judge.** (1) Any party to a civil action or proceeding may file a written request, signed personally or by his or her attorney, with the clerk of courts for a substitution of a new judge for the judge assigned to the case. The written request shall be filed preceding the hearing of any preliminary contested matters and, if by the plaintiff, not later than 60 days after the summons and complaint are filed or, if by any other party, not later than 60 days after service of a summons and complaint upon that party. If a new judge is assigned to the trial of a case, a request for substitution must be made within 10 days of receipt of notice of assignment, provided that if the notice of assignment is received less than 10 days prior to trial, the request for substitution must be made within 24 hours prior to trial, the action shall proceed to trial only upon stipulation of the parties that the assigned judge may preside at the trial of the action. Upon filing the written request, the filing party shall forthwith mail a copy thereof to all parties to the action and to the named judge.

"(2) After the written request has been filed, the named judge shall have no further jurisdiction in the action or proceeding except that the judge shall determine if the request is correct as to form and timely filed. If the request is correct as to form and timely filed, the named judge shall be disqualified and shall promptly request assignment of another judge under s. 751.03. The newly assigned judge shall proceed under s. 802.10 (1)."

The sequence of events in the case at bar is as follows: On July 9, 1975, Anne and Richard Tarney were divorced by judgment entered by Ralph J. Podell, circuit judge for Milwaukee county. On May 2, 1979, Richard Tarney brought an order to show cause before the family court commissioner seeking a modification of the alimony and support provisions of the divorce judgment.

Sec. 247.32(1), Stats. The deputy family court commissioner heard the motion on July 26, 1979, and issued his decision on October 25, 1979. Anne J. Tarney, the petitioner in this proceeding, prevailed in the hearing on the motion and was directed by the deputy family court commissioner to prepare an order based upon his decision "for approval by the Family Court Commissioner and signature by the court." As directed, petitioner's counsel submitted a proposed order to the deputy family court commissioner on October 26, 1979. The order was approved by the deputy family court commissioner on November 6, 1979, and was signed by the circuit court by Christ T. Seraphim, circuit judge for Milwaukee county, on November 12, 1979. On November 13, 1979, petitioner's counsel received not only a conformed copy of the signed order adopting the commissioner's decision, but also a copy of a motion and notice of motion by Richard Tarney's counsel dated November 7, 1979. The motion sought a review of the deputy family court commissioner's decision denying reduction of alimony and child support. The motion was scheduled to be heard before Judge Christ T. Seraphim on November 30, 1979.

The procedure followed in the case at bar of a hearing before the family court commissioner and assignment of the proposed order and any motion to a judge without prior notice to counsel of the identity of the judge is apparently the practice in Milwaukee county. The clerk of circuit court for Milwaukee county does not assign a pending family court matter to a particular judge or to a particular branch until a notice of readiness for trial or a notice of motion and motion is filed with the office of the family court commissioner. Upon the filing of one of these notices, the clerk of circuit court assigns the matter to a specified judge or branch of the court, and the name of the judge or the number of the branch of court is inserted on the moving party's papers which

are then served on opposing counsel. Thus under the procedures adopted by the circuit court for Milwaukee county, opposing counsel has no way of knowing which judge is assigned to the family court matter until an order is signed or the party's motion papers are served. In the instant case, petitioner's counsel first learned that Judge Christ T. Seraphim was assigned to review the decision of the deputy family court commissioner on November 13, 1979, when counsel received a conformed copy of the order signed by the judge adopting the commissioner's decision. On the same day, November 13, 1979, petitioner's counsel was advised that Judge Seraphim would hear Richard Tarney's motion objecting to the commissioner's decision. On the same day, November 13, 1979, petitioner's counsel filed a request for substitution of judge pursuant to sec. 801.58, Stats., with the clerk of circuit court for Milwaukee county and with the deputy calendar clerk of circuit court for Milwaukee county.

By letter dated November 19, 1979, the calendar clerk of circuit court for Milwaukee county advised petitioner's counsel that "after conferring with Judge John F. Foley, Chief Judge of Family Court [Division of the Milwaukee county circuit court]" it was the position of the clerk's office and Judge Foley that "there is no procedure for filing a substitution of judge in a case that is being brought to court before the motion judge in a family court matter." The clerk refused to file petitioner's request for substitution and returned petitioner's papers to petitioner's counsel.

Petitioner then petitioned the court of appeals for relief pursuant to Rule 809.51, Stats., seeking a supervisory writ to compel "the honoring and implementation of petitioner's Request for Substitution of Judge."[2]

---

[2] Petitioner's case is moot because Judge Seraphim cannot now hear the motion for reasons irrelevant to this case. *See In the*

The court of appeals, relying on the interpretation of the substitution statutes in *Bacon v. Bacon,* 34 Wis. 594 (1874), *Hopkins v. Hopkins,* 40 Wis. 462 (1876), *Sang v. Sang,* 240 Wis. 288, 3 N.W.2d 340 (1942), *Luedtke v. Luedtke,* 29 Wis.2d 567, 139 N.W.2d 553 (1966), and *Bahr v. Galonski,* 80 Wis.2d 72, 257 N.W.2d 869 (1977), denied the petition for a supervisory writ on the ground that sec. 801.58, Stats., does not apply to proceedings to modify a divorce judgment.

Petitioner concedes that the language of sec. 801.58, Stats., neither specifically includes nor specifically excludes family court matters from its purview, that this court in the *Bacon* to *Bahr* line of cases construed sec. 801.58, Stats., and its predecessors, as being inapplicable to proceedings to modify a divorce judgment, and that these cases appear to establish the "black letter rule" that there is no statutory right to substitute a judge in a proceeding to modify a divorce judgment. Nevertheless, petitioner argues that this case is distinguishable from the previous cases cited and that the rationale and the policy grounds which underlie the black letter rule are inapplicable to the fact situation in the case at bar. Petitioner concludes that therefore the black letter rule should not be applied in the instant case. Although the court of appeals apparently agreed with petitioner's reasoning, the court of appeals refused to accept petitioner's conclusion. The court of appeals refused to depart from the rule, saying that "while the public policy served by this rule is not promoted by recognition of the rule in Milwaukee county, we believe the

*Matter of the Complaint Against the Honorable Christ T. Seraphim,* 97 Wis.2d 485, 294 N.W.2d 485 (1980). Nevertheless, because the issue of substitution raised in this case is likely to recur and is of sufficient importance to warrant a holding which will guide trial courts in similar circumstances, *Oshkosh Student Assoc. v. Bd. of Regents,* 90 Wis.2d 79, 279 N.W.2d 740 (1979), we will decide the issue.

long-standing case law must be followed in this case." We conclude that the public policy served by the rule established in the *Bacon* to *Bahr* cases is not served by applying the rule to the fact situation presented in the instant case, and consequently we refuse to apply the rule in the instant case.

A review of the *Bacon* to *Bahr* line of cases reveals that all five cases posed an almost identical fact situation and that the court in concluding in each case that there was no statutory right of substitution was responding to that particular fact situation, namely the party was seeking the substitution of a judge who had already heard contested proceedings relating to the divorce between the parties. The dissimilarity of those cases to the case at bar is readily apparent.

The genesis of the rule is *Bacon v. Bacon,* 34 Wis. 594 (1874), in which the wife brought a petition to modify the alimony provisions of the divorce judgment. Without explanation or discussion, this court, by way of dicta, opined that a party could not get a substitution of judge saying the statute then existing[3] did "not extend

[3] The statutory predecessors of sec. 801.58, Stats., for substitution of judge in effect at the time of *Bacon* read as follows:

"SECTION 2625 [Stats. 1878]. The court shall change the place of trial of any action upon the application of any party thereto who shall file his affidavit, that he has good reason to believe, and does believe, that he cannot have a fair trial of such action on account of the prejudice of the judge, naming him. If such application shall be made after any continuance in the action, it shall be granted, however, only upon the payment of the costs of making such change and the costs of the term; but no costs for attendance of witnesses shall be included, if notice of the application, with a copy of such affidavit, shall have been served upon the opposite party ten days before the commencement of the term. But one change of the place of trial shall be granted to the same side, under the provisions of this section.

"SECTION 2626 [Stats. 1878]. When the place of trial shall be changed, it shall be changed to some county where the causes complained of do not exist; and, except under the provisions of

to a proceeding of this kind." *Bacon, supra,* 34 Wis. at 595.

In *Hopkins v. Hopkins,* 40 Wis. 462, 465 (1876), another case involving an application for modification of alimony provisions of the divorce judgment, the court, citing *Bacon,* but without any discussion or elaboration, upheld a circuit court's denial of an application under the statute for substitution of a judge.[4]

The next case to come before this court was *Sang v. Sang,* 240 Wis. 288, 3 N.W.2d 340 (1942), a proceeding to modify the divorce judgment with reference to the custody of minor children. This court again refused to allow the substitution of a judge. The court concluded that the request was not timely because it was made after there had been several proceedings on the matter before the trial court.[5] Neither *Bacon* nor *Hopkins* was cited in support of the holding.

the next preceding section, no such change shall be made in any action after one continuance, had on the motion of the party applying for a change, unless it shall appear to the court that the cause therefor was discovered or developed after such continuance."

[4] *See* note 3 *supra* for the statutory provisions in effect at the time of *Hopkins.*

[5] The statutory predecessors of sec. 801.58, Stats., in existence at the time of *Sang* were secs. 261.08, 261.09, Stats. 1941, which read as follows:

"261.08 **Venue changed for judge's prejudice; calling other judge.** (1) The court shall change the place of trial to an adjoining circuit upon the application of any party, who shall file his affidavit, that he has good reason to, and does believe, that he cannot have a fair trial on account of the prejudice of the judge, naming him, or the court may retain the action until the end of the current term; and in the meantime shall request the chairman of the board of circuit judges to call some other circuit judge to attend and hold court during the current or next term for the purpose of exercising jurisdiction in all actions and proceedings in which applications for change of the place of trial have been made for such reason. And while so in attendance, said judge may make all orders and hear all applications and motions that

The fourth case, *Luedtke v. Luedtke,* 29 Wis.2d 567, 139 N.W.2d 553 (1936), dealt with a substitution request in a proceeding to modify the alimony and support for

may be brought on for hearing. If no other judge can hold court for such purpose, at either of such terms, an order changing the place of trial shall be entered on the first day of the next term.

"(2) If such application is made after a continuance obtained by the party filing such affidavit, it shall be granted only upon payment of costs, but no costs for the attendance of witnesses shall be included if notice of the application, with a copy of such affidavit, was served upon the opposite party at least ten days before the commencement of the term. But one change of the place of trial shall be granted to the same side under this section.

"(3) When the judge named in the affidavit is the presiding judge of the circuit, such affidavit must be filed and motion thereon made on or before the first day of the term, at which the case is triable, or within ten days after the case is noticed for trial; and when the judge so named is the judge of some other circuit, the affidavit must be filed and motion thereon made on the first day such judge holds court and before any proceeding is had in the case in which such affidavit is filed. When such affidavit names a judge of a circuit court consisting of branches, it must be filed and motion thereon made before the case is called for trial. The filing of such affidavit shall not deprive the presiding judge of the circuit, or of the branch of a circuit court in which the case is pending, of jurisdiction to determine pending motions made by the party filing such affidavit. No such affidavit shall name more than one circuit judge, except that in a circuit court consisting of more than two branches such affidavit may name two judges of said circuit court.

"(4) Unless a called judge shall attend and begin the trial of such action or proceeding as early as the opening of court on the second day after the action is reached for trial in its regular order, the action shall not be called for trial (without consent of the parties) until such judge has given to the clerk of the court five days' notice of the time when he will attend, and the clerk shall give to the attorneys of record of all the parties immediate notice of the said time." [1935 c. 541 s. 22]

"261.09 **Time for motion to change venue.** The place of trial shall not be changed, except under the provisions of section 261.08 after one continuance had on the motion of the party applying for a change unless it shall appear to the court that the cause

minor children provisions of a divorce decree. The court read the dicta in the *Bacon* decision as being the law of this state and concluded that, although divorce actions are civil actions and are within the purview of the statutory provisions relating to substitution of judges, the statutes on substitution of judges "do not apply to applications to modify or alter divorce judgments." *Luedtke, supra,* 29 Wis.2d at 570.[6] The court concluded that this long-accepted interpretation excluding post-judgment divorce actions from the statutory provisions on substitution of judges rests upon the sound public policy that "applications to change provisions of divorce judgments can be more satisfactorily handled by the trial judge in view of his contact with the parties throughout the litigation." *Luedtke, supra,* 29 Wis.2d at 571.[7]

---

therefor was discovered or developed after such continuance." [1935 c. 541 s. 23]

[6] The applicable statute in *Luedtke* was sec. 261.08(1), Stats. 1965, which provided as follows:

"261.08 **Venue changed for judge's prejudice; calling other judge.** (1) Upon the application of any party, who files his affidavit, that he has good reason to, and does believe, that he cannot have a fair trial on account of the prejudice of the judge, naming him, the court shall request the chief justice of the supreme court or other designated justice to call some other judge to attend and hold court during the current or next term for the purpose of exercising jurisdiction in all actions and proceedings in which applications for change of the place of trial have been made for such reason. And while so in attendance said judge may make all orders and hear all applications and motions that may be brought on for hearing. If no other judge can hold court for such purpose, at either of such terms, an order changing the place of trial shall be entered on the first day of the next term. In no event, however, shall a judge against whom an affidavit of prejudice has been filed be allowed to choose the successor judge."

[7] The applicability of the *Bacon-Bahr* rule to judgments other than divorce judgments is not an issue before the court and we do not rule on it. We note, however, that two justices concurred in the *Luedtke* opinion explaining that they agreed with the ma-

The most recent case of this court addressing the issue of substitution of judges in a proceeding to modify a divorce judgment is *Bahr v. Galonski*, 80 Wis.2d 72, 257 N.W.2d 869 (1977). In *Bahr*, the divorce had been granted in 1969 in the State of Oregon, and both parties thereafter moved to Wisconsin. The father initiated proceedings in Outagamie County, Wisconsin, for a change of custody of minor children, and in November, 1974, the county court denied the father's petition. The father appealed, the county court's order was vacated, and the cause was remanded to the county court. In August, 1976, the county court entered a second order, this time awarding custody to the father. In October, 1976, the mother filed a motion to increase her visitation rights; the father sought a substitution of judge;[3] the father's request was denied; and an appeal was taken from the county court's actions. This court upheld the county court's denial of substitution relying on the rationale of the *Sang* and *Luedtke* cases that the trial court which

jority's opinion that the substitution was properly rejected and emphasizing that the rationale of the majority opinion, namely that a party seeking a modification of a judgment should not be permitted to file an application for substitution of judge to obtain review of one trial judge by a second trial judge and to circumvent the necessity of taking an appeal, should not be limited to divorce actions. The concurring opinion said:

"The concept of *Sang v. Sang* (1942), 240 Wis. 288, 296, 3 N.W. (2d) 340, is, in our opinion, equally applicable to actions other than divorce proceedings. If a litigant wants to alter a divorce judgment he should go back to the court which entered the judgment; he is not free to have the ruling of one judge reviewed by another judge without taking an appeal. There is no reason why this rule should be confined to divorce actions. The evil of permitting a litigant in the aftermath of a judgment to oust the judge who made the original ruling is just as wrong in a contract case or a tort case as it is in a divorce case." *Luedtke v. Luedtke*, *supra*, 29 Wis.2d at 567 (Gordon and Beilfuss, JJ. concurring).

[3] The statutory provision applicable in *Bahr* was sec. 261.08, Stats. 1965, which is set forth in note 6 *supra*.

had contact with the parties throughout the litigation should handle applications to modify a divorce judgment. The court explained its holding in *Bahr* as follows:

"Section 261.08, Stats., has now been replaced by sec. 801.58, concerning substitution of judges. The holding in *Luedtke, supra,* was not based on any specific language in sec. 261.08, however. Indeed, neither that section nor the current provision mentions divorce actions. Rather, as the court said in *Luedtke,* the rule rests on long-standing case law and sound public policy. Applications to modify any aspect of a divorce judgment, and particularly the custody of children or parental visitation rights, are more satisfactorily disposed of by the trial court in view of its contact with the parties throughout the litigation. *Sang v. Sang,* 240 Wis. 288, 296, 3 N.W.2d 340 (1942) ; *Luedtke v. Luedtke, supra.*

"In the present case, of course, the Outagamie county court did not conduct the proceedings for the judgment of divorce, which was awarded in Oregon. For more than four years, however, the trial court has heard various proceedings to transfer custody and to alter the respective rights of the parents. As in *Sang v. Sang, supra,* the proceeding involved in this appeal was commenced to modify the court's earlier custody decision. The reasoning of *Sang* and *Luedtke* is fully applicable, therefore, and the affidavit of prejudice or request for substitution of judge was properly denied." *Bahr, supra,* 80 Wis.2d at 86, 87.

In each of the cases in the *Bacon* to *Bahr* series of cases the trial judge against whom the request for substitution was filed was the same judge who had heard the original divorce action or who had prior to the filing of the request heard a matter between the parties relating to the divorce judgment. In the instant case the trial judge against whom the request for substitution was filed had not heard either the original divorce proceeding or any proceeding subsequent to the divorce involving the divorce judgment.

Substitution of the named judge was prohibited in each case in the *Bacon* to *Bahr* series of cases. The pub-

lic policy reasons for denying substitution are clearly stated in the later cases: The trial judge has become familiar with the parties and the circumstances and is by reason of this experience best prepared to hear further proceedings in the case and therefore should handle applications to modify the divorce judgment, particularly alimony, child support, custody of children and visitation rights. This rationale is not applicable to the facts of the instant case. The policy of efficient allocation of judicial resources which the *Bacon* to *Bahr* line of cases promotes is not involved in the instant case.

We conclude that the *Bacon-Bahr* rule interpreting sec. 801.58, Stats., to bar substitution of a judge in a proceeding to modify a divorce judgment providing alimony and support payments is limited to those cases in which the trial judge against whom a request for substitution is filed is a judge who has a familiarity with the parties or circumstances because he or she has heard either the original divorce action or proceedings subsequent thereto relating to the divorce judgment between the parties. The *Bacon-Bahr* rule is therefore not applicable to the case at bar. We hold that sec. 801.58, Stats., grants the right of substitution of a judge in a proceeding to modify the divorce judgment providing alimony and support payments in those cases in which the trial judge against whom a request of substitution is filed has not heard the original divorce action or proceedings subsequent thereto relating to the divorce judgment between the parties.

We turn now to respondent's contention that petitioner's request for a substitution of a new judge was not filed timely. Respondents argue that Judge Seraphim's signing of the proposed order adopting the recommendations of the deputy family court commissioner prior to petitioner's filing of her request for substitution renders

the request untimely because sec. 801.58 (1), Stats., provides that a written request must be filed "preceding the hearing of any preliminary contested matters . . . ." The signing of the order by Judge Seraphim, respondents contend, amounts to the judge's participation in a contested matter and a determination of substantive rights.

The statutory provisions on substitution require that the request be filed before the judge has heard any contested matter. The legislative intent is "that the affidavit be filed before the court reaches the substantive issues." *Bahr v. Galonski*, 80 Wis.2d 72, 87, 257 N.W.2d 869 (1977). The reason for the statutory requirement is that a litigant who does not like the way a judge is handling a matter should not be able to substitute a second judge simply because the litigant believes things are going badly before the first judge and hopes to obtain a more favorable tribunal.

We conclude that the request was timely. Our decision rests on two grounds: First, the request was filed preceding the hearing of any contested matter, and second, the request for substitution was filed promptly and without delay after the petitioner had notice of the judge assigned to the action.

We agree with respondents that the judge's act of signing the order is not perfunctory. Before signing an order the judge must ascertain and decide the merits of the matter. Nevertheless we conclude that for purposes of sec. 801.58, Stats., when Judge Seraphim signed the order on November 12, 1979, there had been no hearing before the judge on any contested matter. This construction of the judge's act of signing the order is consistent with the language of the statute and with the practice in Milwaukee county out of which this case arose.

The practice in Milwaukee county appears to be that if a judge, without a hearing, signs the order adopting

the decision of the family court commissioner, the losing party may seek a hearing before the judge to consider the commissioner's decision. Consequently, in the instant case the first hearing before the judge of any contested matter would have occurred on November 30, 1979, when Judge Seraphim was scheduled to hear Richard Tarney's motion. Under these circumstances, petitioner's filing the request for substitution on November 13, 1979, preceded the hearing of any preliminary contested matter before the judge and was timely under sec. 801.58(1), Stats.

Moreover, if we accept respondents' contention that the petition was not filed timely because Judge Seraphim signed the order in chambers, petitioner's right of substitution would come into being and would be terminated before petitioner was aware of the identity of the judge before whom the matter would be heard. Such an interpretation of sec. 801.58, Stats., would defeat the legislative purpose of allowing substitution of a judge and would be contrary to this court's practice of interpreting the statutory substitution provisions in a reasonable manner to give the litigant a reasonable period of time to request a substitution after he or she learns which judge is assigned to the case. *State ex rel. Akavickas v. Marathon County,* 77 Wis.2d 297, 298, 252 N.W.2d 386 (1977); *Clark v. State,* 92 Wis.2d 617, 628, 286 N.W.2d 344 (1979).

Sec. 801.58(1), Stats., does not set forth a time period for filing a request for substitution which is specifically applicable to the procedure used in Milwaukee county in the instant case. We conclude, however, that the third sentence of sec. 801.58(1), Stats., establishes a reasonable time period for filing a request which is adaptable to the circumstances of this case: "If a new judge is assigned to the trial of a case, a request for substitution must be made within 10 days of receipt of notice of assignment, provided that if the notice of as-

signment is received less than 10 days prior to trial, the request for substitution must be made within 24 hours prior to trial, the action shall proceed to trial only upon stipulation of the parties that the assigned judge may preside at the trial of the action." The petitioner in the instant case filed her request on the date she was notified of the assignment of the judge and this date was more than ten days prior to the hearing. We conclude that petitioner filed the request timely.[9]

Accordingly, we conclude that because the request for substitution of judge in the case was filed before the assigned judge heard any contested matter between the parties and was filed within the time period set forth in sec. 801.58(1), Stats., after the petitioner had notice of the identity of the judge assigned to the matter, the request was timely made and must be honored. Accordingly, we reverse the order of the court of appeals and grant the petition to compel respondents to honor and implement the request for substitution of a judge.

*By the Court.*—Decision of the court of appeals reversed; petition granted.

COFFEY, J. (*concurring*). I agree with the opinion of the court, but state that I am opposed to the liberal substitution procedures set out in sec. 801.58, Stats., and its criminal counterpart, sec. 971.20, Stats.[1] These stat-

---

[9] We do not view petitioner's filing a notice of counter motion and motion on November 14, 1979, the day after filing her request for substitution, as a waiver of her request by participating in the contested matter. *See Pure Milk Products Coop. v. NFO,* 64 Wis. 2d 241, 246–250, 219 N.W.2d 564 (1974). *Cf. Clark v. State,* 92 Wis.2d 617, 632, 286 N.W.2d 344 (1979).

[1] Sec. 971.20, Stats., provides:

"Substitution of judge. (1) The defendant or the defendant's attorney may file with the clerk a written request for a substitution of a new judge for the judge assigned to the trial of that case. The request shall be signed by the defendant or the defendant's

utes grant an absolute right (assuming the request is timely made and in proper form) to have at least one substitution of the assigned judge and this right is fre-

attorney personally and shall be made before making any motion or before arraignment. If a new judge is assigned to the trial of a case, a request for substitution must be made within 10 days of receipt of notice of assignment, provided that if the notice of assignment is received less than 10 days prior to trial, the request for substitution must be made within 24 hours of receipt of the notice and provided that if notification is received less than 24 hours prior to trial, the action shall proceed to trial only upon stipulation of the parties that the assigned judge may preside at the trial of the action.

"(2) Upon the filing of the request in proper form and within the proper time the judge named in the request has no authority to act further in the case except to conduct the initial appearance, accept pleas of not guilty, and set bail. Except as provided in subs. (7) and (8), no more than one judge may be substituted in any action.

"(3) In addition to the procedure under sub. (1), a request for the substitution of a judge may also be made by the defendant at the preliminary examination except that the request must be filed at the initial appearance or at least 5 days before the preliminary examination unless the court otherwise permits.

"(4) When a judge is substituted under this section, the clerk of circuit court shall request assignment of another judge under s. 751.03.

". . .

". . .

"(7) If the judge who heard the preliminary examination is the same judge who is assigned to the trial of that case, the defendant or the defendant's attorney may file a request under sub. (1) within 7 days after the preliminary examination or at the time of the arraignment, whichever occurs first, and still retain the right for one additional request under sub. (1).

"(8) If upon an appeal from a judgment or order or upon a writ of error the appellate court orders a new trial or reverses or modifies the judgment or order in a manner such that further proceedings in the trial court are necessary, the defendant or the defendant's attorney may file a request under sub. (1) within 20 days after the entry of the judgment or decision of the appellate court whether or not another request was filed prior to the time the appeal or writ of error was taken."

quently abused in that it is all too often invoked because the litigant's attorney does not approve of the assigned judge, or if the attorney is unprepared and expects that the substitution process will accomplish another delay. This type of substitution practice is a dilatory tactic that causes a great deal of expense and inconvenience to litigants, to witnesses, as well as the taxpayers who foot the bill for court administration. In the past two years, a study conducted by the Resource Planning Corporation of Washington, D. C. (RPC) at the request of the Wisconsin Judicial Planning Committee determined that one of the major causes of delay in the Wisconsin trial court system is its "unique and extremely liberal" substitution practice delineated in secs. 801.58 and 971.20, Stats.[2]

---

[2] *See:* Wisconsin Case Processing Study Final Report, July 1, 1978 at pp. 4–7, 4–8 (hereinafter referred to as Final Report). In this study the RPC concluded as follows:

"4.5    *Eliminate Judicial Substitution as a Matter of Right*

"The Rules of Civil Procedure and the Criminal Procedure Code presently allow each party to an action to request and receive substitution of a new judge for the judge assigned to the case. As of July 1, 1978, the request in civil actions may be filed as late as 60 days after the party was served with a summons and complaint.

"No justification for these provisions can be found; in fact, the comment to the criminal substitution provision states only that affidavits of prejudice were used primarily as tactical devices, and therefore the substitution terminology is more accurate. This argument implies that since substitution was being abused and used primarily as a tactical device, it was accepted and institutionalized in the form of the current statutory provisions on substitution. Although data are not available on the substitution policies or the rates of judicial substitution in other states, in the experience of the consultants, Wisconsin's substitution procedures are unique and extremely liberal.

"Substitution has a negative impact on the appearance of justice and on timely disposition of cases. The case processing date presented in Chapter 3.0 documents delay in the courts. Though no data were collected on the frequency of substitutions, judges' replies to questionnaires and interviews indicated a perception that substitution was indeed a major cause of delay.

As a result of this investigation, the PRC recommended that the delay occasioned by the present substitution procedures would be eliminated by abandoning the concept of judicial substitution as a *matter of right* and a return to the method of disqualifying judges only *for cause*, a procedure similar in nature to that employed in federal courts[3] and formerly used in Wisconsin. Specifical-

"The judge assigned to a case has little impetus to become involved in its early stages if a substitution request might ultimately be filed. After a request is filed, assignment of a new judge might take several weeks. In fact, consultant teams noted that in some instances substitution of a judge required over two months to perfect. This not only delays the case at hand, but also adversely impacts the newly assigned judge's calendar. In addition, judges mentioned that substitution is a much abused process, used as a delaying tactic by attorneys with the expectation that the process will consume a significant amount of time.

"Moreover, elimination of the right to judicial substitution would allow the trial judiciary greater latitude in caseflow management. The present substitution provision is, in fact, an implicit statutory prohibition against master calendars. We do not believe that either a master or an individual calendaring system is inherently better than the other, but do believe that the judges at the local level should have the greatest possible discretion in the development of procedural policy for their courts.

"Judges should be under an affirmative duty to disqualify themselves in cases in which they have an interest, have formed an opinion or predisposition of the facts, or are related to the parties professionally or by consanguinity or affinity. This, combined with a return to the affidavit of prejudice, should alleviate delay caused by substitution.

"It should be noted the recommendation to reinstitute the affidavit of prejudice is contingent upon two conditions. A party bringing a motion for disqualification based on prejudice should be required to show cause, and the motion should be reviewed, heard, and decided by a judge other than the judge named in the affidavit.

"Obviously, nothing in these recommendations infringes on a party's right to appeal a decision in which the record reflects prejudicial conduct on the part of the trial judge."

[3] *See:* 28 U.S.C. §§144 and 455 (1979) and Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction §§3542 and 3551 (1975).

ly, the RPC recommended that: (1) litigants should be allowed to disqualify the assigned judge only upon the filing of an affidavit of prejudice with a judge other than the judge named in the affidavit in which the movant would be required to show cause, and (2) "judges should be under an affirmative duty to disqualify themselves in cases in which they have an interest, have formed an opinion or predisposition of the facts, or are related to the parties professionally or by consanguinity or affinity."[4]

The legislature should consider redrafting the procedures for substitutions by affidavits of prejudice (substitution of judges) and allow for the affidavit of prejudice only after a showing of due cause. This change, in addition to the taxing of costs against a party who filed an affidavit of prejudice but was unable to prove cause to replace the presiding judge, would be a major step toward eliminating judge shopping and case processing delay in our overburdened court system.

Some thought has been given to limiting the substitution of judge to only one per case. It should be pointed out, however, that the filing of an affidavit of prejudice (now known as request for substitution of judge) when allowed as a matter of right causes more serious problems in a case where there are multi-party litigants not united in interest. A serious constitutional question arises if one litigant is granted a right to file an affidavit of prejudice to remove a judge from the case and others similarly situated are not accorded the same right against the successor judge.

[4] Final Report, *supra* n. 2 at 4–8.