Joan A. CONNELLY, Appellant/Cross–
Appellee,

v.

SWICK & SHAPIRO, P.C.,
Appellee/Cross–
Appellant.

No. 98–CV–114, 98–CV–242.

District of Columbia Court of Appeals.

Argued Dec. 7, 1999.
Decided April 27, 2000.

Bardyl R. Tirana, for appellant/cross-appellee.

Richard W. Stevens, with whom Richard L. Swick, Washington, DC, was on the brief, for appellee/cross-appellant.

Before TERRY and WASHINGTON, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

This litigation, involving an initial claim and counterclaims, between a lawyer and a former client, arose out of a dispute over the meaning of a retainer agreement governing attorney's fees. In this appeal by appellant from a jury verdict in favor of appellee, a law firm, there is also a cross-appeal by appellee from the denial of a request for prejudgment interest. We affirm in part, and reverse in part.

## I.

Appellant, Joan A. Connelly, worked for a company for almost thirty years. In June 1993 she was discharged from her employment. Believing that she was the victim of age discrimination, appellant obtained the services of an attorney practicing in this jurisdiction. Having incurred financial obligations in the amount of $11,-044, appellant chose to terminate that relationship. Later appellant retained the law firm of Swick & Shapiro, P.C., appellee, to represent her in a wrongful discharge action against her former employer.

Appellant's initial meeting with appellee occurred on June 3, 1994. At this meeting appellee agreed to represent appellant in a lawsuit against her former employer. A retainer agreement was drafted, and appellant was provided a copy. Subsequently, the agreement was approved and signed on June 6, 1994, by appellant and appellee.

On June 10, 1994, appellee filed a complaint against appellant's former employer. Ultimately, after extended negotiations conducted under the supervision of a Superior Court judge, the lawsuit was settled on November 15, 1995. The complete terms of the settlement agreement were reduced to writing, and on November 17, 1995, appellant and appellee approved and signed the final settlement agreement.

The settlement agreement provided that appellant receive:

A check in the amount of Three Hundred and Thirty–Eight Thousand Dollars and No Cents ($338,000.00). The parties agree that this sum is paid as damages for personal injuries attributable to the alleged violation of the District of Columbia Human Rights Act. A check in the sum of One Hundred and Seventy–Seven Thousand Dollars and No Cents ($177,000.00) for Connelly's attorneys fees and costs. Within five (5) business days after receipt by [employer's] counsel of a fully executed Agreement by Connelly and her counsel, [employer] shall also pay to Connelly the sum of Fifteen Thousand Dollars and No Cents ($15,000.00). The parties agree that this sum is paid as a consultant's fee for Connelly's services provided during the period July 17, 1993 through October 16, 1993, and that [employer] shall issue an IRS form 1099 in 1996 for this amount.

Both the check in the amount of $338,-000.00 and the check for $177,000.00 were payable jointly to appellant and her attorney. The check in the amount of $15,-000.00 was payable to appellant only.

Having signed the settlement agreement and stated her approval of it to the presiding judge, appellant, shortly thereafter, called the judge's chambers raising concerns about her case. In response, on November 21, 1995, the judge initiated a series of three hearings. The judge, attorneys for both sides, and appellant were present. Appellant disputed appellee's demand that, pursuant to their retainer agreement, she was obliged to pay to the firm twenty-five percent of the monies received by her, in addition to the settlement payment of $177,000 to the attorneys. At the hearings the judge reviewed the distribution of monies received under the settlement. It was at this juncture that the judge first became aware that a retainer agreement, containing a contingency provision, existed between appellant and appellee. There was discussion of placing the checks in Superior Court's registry until the dispute was resolved. However, upon the agreement of the parties, appellant

endorsed the check for $177,000 to appellee, while appellee endorsed the check in the amount of $338,000 to appellant.

On December 1, 1995, appellee filed a complaint against appellant in the Superior Court seeking damages for breach of contract. Appellant, in turn, filed a counterclaim asserting breach of contract, negligence, intentional infliction of emotional distress, breach of fiduciary duty, and breach of covenant of good faith and fair dealing. Prior to trial, both sides filed motions for summary judgment.[1]

A jury returned a verdict for appellee on its breach of contract claim in the amount of $43,836.61 and in favor of appellee on appellant's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing. The judge directed a verdict against appellant on her breach of fiduciary duty claim. This amount awarded by the jury ($43,836.61) is the difference between the $88,250 (twenty-five percent of $353,000), which was allegedly owed to appellee under the contingency clause of the retainer agreement, and $44,388.39, which was the amount to be refunded to appellant for amounts she paid to the law firm and money paid to her prior attorney. Appellant filed a motion for a new trial on November 7, 1997, which the court subsequently denied. Thereafter, appellant and appellees filed notices of appeal.

## II.

### (A)

Because interpretation of the agreement is at the center of the dispute, we set forth, at length, the pertinent provisions of the agreement:

2. I agree to pay for legal services connected with the firm's efforts in the above-noted matter at the firm's normal billing rates of $250 per hour for the time of partners of the firm and $175 per hour for the time of associates of the firm up to a maximum "cap" of $20,-000.00.* In addition, and no matter how much in hourly fees I am required to pay (up to the cap), I agree to pay the firm 25% of any and all amounts I may obtain as a result of my claims, however the funds are characterized (*e.g.*, as back pay, front pay or compensatory damages) and whether such funds are obtained through settlement or judgment or otherwise.

3. In addition to paying for legal services as noted above, I further agree to pay all expenses incurred in carrying out the above legal representation including, without limitation, travel and related expenses, photocopying, messengers, postage, overnight delivery expenses, fax charges and long distance telephone expenses, filing and witness fees, the cost of service of process and subpoenas, deposition expenses, jury fees, and transcript costs.

4. I understand that the firm is providing me with the above-specified "cap" on its normal hourly billing—and a partial contingent fee arrangement—because of my current financial situation. I also understand that should I prevail on my claim and become entitled to an award of attorneys' fees and costs under a fee shifting statute or otherwise (*e.g.*, settlement agreement), the firm will apply for fees and costs (including those incurred by me with prior counsel) in my name and on my behalf, however, I agree that this will not serve to delay my obligation to pay the firm what it is due hereunder—both in hourly fees up to the cap and its contingent share of any funds obtained (and costs and expenses). I further understand and agree that the firm will seek an award for all time reasonably spent on my behalf whether or not within the cap, but not the contingent fee (*i.e.*, the 25%),

1. Summary judgment in favor of appellee was granted as to appellant's claims of negligence

and infliction of emotional distress.

although I will be entitled to reimbursement only of what I actually paid the firm in hourly fees (up to the cap)—and anything awarded that I paid prior counsel, but not any amount provided to the firm under the partial contingency arrangement—plus what I have paid in awarded costs and expenses.

5. I agree to provide the law firm with sum of $10,000.00 as an advance retainer, $5,000.00 upon the signing of this retainer agreement and the remainder within 60 days of the signing of this retainer agreement. I understand and agree that all fees for legal services over and above this $10,000.00 advance (up to the $20,000.00 cap) and all expenses will be billed to me monthly and shall be due and payable within 30 days of my receipt of such statements.

### (B)

In tracing the procedural history of events in this matter we observe, significantly that when the trial judge in the original case mediated the settlement between appellant and her former employer, the judge was unaware of the existing fee agreement with appellee. When the meaning of agreement became a source of dispute, the judge expressed misgivings, but reluctantly allowed the agreement to stand with appellant's approval. Thus, except for bringing some measure of order to unexpected circumstances surrounding a purported agreement reached by appellant and her former employer, the mediation judge was never in a position to consider the settlement in terms of the retainer agreement. In a word, the judge, because of factors unknown to her before the settlement, had no meaningful opportunity to exercise judicial oversight as to requested legal fees.

As the present case progressed towards trial, appellee's claim of breach of contract was countered by the remaining claims asserted by appellant. After the rulings by the motions judge, the primary questions presented to the jury were appellee's claim of breach of contract, and appellant's counterclaims of breach of contract, breach of fiduciary duty, and breach of good faith and fair dealing. Despite the trial judge's earnest efforts, she received minimal assistance in crafting instructions from counsel for both parties with regard to important questions in the case. The jury was instructed generally that vague and indefinite contractual provisions were unenforceable. Additionally, the jury was instructed that appellee could not recover if it breached an implied covenant of good faith and fair dealing by wilfully rendering less than its best efforts. However, appellant articulated no comprehensive theory regarding a fiduciary's duties in drafting and asserting contractual rights in the circumstances presented. The trial judge ultimately directed a verdict against appellant as to the claim of breach of fiduciary responsibility by appellee. In the absence of bad faith by appellee, the jury was left to decide whether, under appellee's construction of the contract, it was entitled to recover. On the evidence presented, the jury found in favor of appellee, and against appellant on her counterclaims.

### III.

We state at the outset what is probably clear to most, and that is that compensation paid to attorneys for legal services is largely a question of fundamental fairness. The goal is to compensate attorneys reasonably for professional services rendered in a manner where the client's obligation is understood in advance, and accepted as an objectively fair undertaking. Thus it is a familiar premise of long-standing, taking into account a variety of circumstances, that in determining legal fees, consideration should be given to the time and labor required, the difficulty of the questions involved, the particular skills required to serve as counsel in a given case, the customary fee for similar services, the results obtained, the length and nature of the lawyer-client relationship, as well as the experience, reputation

and ability of counsel. DISTRICT OF COLUMBIA RULES OF PROFESSIONAL CONDUCT, R. 1.5; *see also* ABA MODEL RULES OF PROFESSIONAL CONDUCT, R. 1.5. In instances involving a contingent fee or representation pursuant to a fee-shifting statute, the outlay of financial resources and other risks taken by counsel are appropriate factors to be considered in determining the fee. *Id.* R. 1.5(8)(C), Comment 6; Robert L. Rossi, *Attorney Fees* § 2.8 (2d ed.1995); *see also District of Columbia v. Jerry M.,* 580 A.2d 1270 (D.C.1990) (holding that the lodestar calculation is presumed to be a reasonable attorney fee). Because a lawyer occupies a multifaceted position of trust with regard to the client, the professional relationship is fiduciary in nature. *See Maxwell v. Gallagher,* 709 A.2d 100, 102–103 (D.C. 1998) (quoting *Goodrum v. Clement,* 51 App. D.C. 184, 189, 277 F. 586, 591 (1922)); *In re Kennedy,* 542 A.2d 1225 (D.C.1988); *see also* Robert L. Rossi, *Attorneys Fees* § 2.8 (2d ed.1995). Thus there is an ever present fiduciary responsibility that arches over every aspect of the lawyer-client relationship, including fees. *Id.* Indeed, along with other jurisdictions, we, as the body which admits lawyers to practice, have expressly stated our authority and obligation to supervise and monitor persons who practice law, who are in fact officers of the court. *Banks v. District of Columbia Dep't of Consumer and Regulatory Affairs,* 634 A.2d 433, 436 (D.C.1993); *Brookens v. Committee on Unauthorized Practice of Law,* 538 A.2d 1120, 1125 (D.C. 1988); *In re Nace,* 490 A.2d 1120, 1122 (D.C.1985).

■ In support of the jury verdict in its favor, appellee asserts it has provided valuable legal representation on behalf of the client, who might otherwise not have had the quality of representation which was provided. Appellee also points out that contingency fees and fees paid pursuant to public interest statutes are permissible and do not, on that basis alone, impair an attorney's fiduciary duty owed to a client. We agree. In the context of decisions which indicate that recovery of fees, by means of settlement or judgment, should not be split from the primary claims, *see Elmore v. Shuler,* 252 U.S.App. D.C. 45, 787 F.2d 601 (1986); *Moore v. National Ass'n of Securities Dealers, Inc.,* 246 U.S.App. D.C. 114, 762 F.2d 1093 (1985), appellee concludes that it is entitled to be compensated pursuant to terms of the agreement.

■ While we are mindful that there should be no disincentive to provide legal representation in cases of this kind, there is a broader concern. Given the complex retainer agreement in this case, with a multi-layered structure for payment of fees, it is evident from the record that the parties never joined issue on the fundamental difference between them: whether under any interpretation of the agreement, appellee may, consistent with its fiduciary obligations, recover a reasonable but not excessive fee. In the circumstances that evolved, this inquiry was not fully addressed at the settlement conference nor at trial. Stated simply, on the existing record, it does not appear that the trial judge, prior to submitting this case to the jury, considered, or was asked to consider, the provisions of the contract with regard to the legal requirement that fee agreements, between lawyers and client, be scrutinized as to reasonableness. Although the jury was instructed generally as to the nature of agreements, and that vague and ambiguous contracts are unenforceable, there was no guidance or direction given to the jury with respect to the reasonableness of the fee in this case on the basis of the provisions of the contract. This, we think, is a critical aspect of this case.

■ We note that a motion for new trial was denied. Of course, a motion for new trial is directed to the discretion of the court, and affords the trial judge wide latitude to address a verdict which, for any reason or combination of reasons, may have caused a judgment to be contrary to the interests of justice. *See Newell v.*

*District of Columbia,* 741 A.2d 28, 31 (D.C. 1999); *Gebremdhin v. Avis Rent–A–Car System,* 689 A.2d 1202, 1204 (D.C.1997). Our review of such a ruling is deferential, and thus a trial court's denial of relief should be disturbed only on the basis of an abuse of discretion. *Id.* Given our view of the case, we conclude that the trial judge erred in declining to grant a new trial. We emphasize that the deficiency in the trial that was conducted is that the jury was permitted to resolve this contractual dispute between a fiduciary and a client without substantial guidance as to how the terms of the agreement must be considered, and applied to the facts presented. Appropriate judicial instructions in this regard were essential.

Upon remand, the trial judge should be governed by the principles we have discussed. To reiterate, a first principle with respect to legal fees is that they must be reasonable. Similarly, it is generally held that where a dispute stems from the terms of an agreement, the agreement should be construed against the persons who drafted it. *Hamilton v. Ford Motor Co.,* 205 U.S.App. D.C. 37, 40, 636 F.2d 745, 748 (1980) (citations omitted). Lastly, in an effort to reconcile the terms of a contingency provision where there are fiduciary obligations, courts have sometimes construed the legal fee to be taken from all monies "recovered." *Carmichael v. Iowa State Highway Comm'n,* 219 N.W.2d 658 (Iowa 1974); *see Benalcazar v. Goldsmith,* 400 Mass. 111, 507 N.E.2d 1043 (1987); Robert L. Rossi, *Attorney Fees,* § 2.8 (2d ed.1995); Richard A. Posner, *Economic Analysis of Law* § 21.7 (2d ed.1973).

Initially there is the question whether, as a matter of law, under any interpretation, this fee agreement may be construed consistent with the requirement that fees be reasonable. *See Brown v. Union Station Venture Corp.,* 727 A.2d 878, 881 (D.C.1999); *see also Urban Masonry Corp. v. N & N Contractors,* 676 A.2d 26, 33–34 (D.C.1996). Because this aspect of the case involves a question of law, this court could address the issue in the first instance. However, bearing in mind the way this case has evolved, prudence suggests that the trial judge consider it first. We therefore leave the question open. If the trial judge concludes that the agreement is susceptible to an interpretation that meets the requirement of reasonableness, then, in the event of a new trial, the judge, with assistance of counsel, should prepare appropriate instructions consistent with this opinion, bearing on the sole remaining claim, appellee's complaint for legal fees.[2] Accordingly, we affirm in part, reverse in part, and remand the case.

### CONCLUSION

We affirm the summary judgment in favor of appellee as to appellant's claims of negligence and intentional infliction of emotional distress. We affirm the jury's verdict against appellant as to the counterclaims alleging breach of contract and breach of covenant of good faith and fair dealing. We also affirm the directed verdict ordered as to appellant's claim of breach of fiduciary duty, and the denial of appellee's claim for prejudgment interest.[3] Lastly, we reverse the trial court's denial of appellant's motion for new trial as to appellee's primary claim, and remand for further proceedings.

*So ordered.*

2. In the event of a new trial, the trial judge, in an effort to clarify the jury's findings, may well consider the use of a special verdict form.

3. Given our view of this case, there is little support in the record that would sustain any of the established premises for prejudgment interest. Accordingly, we find no abuse of discretion in the denial of appellee's request for prejudgment interest. *See District of Columbia v. Pierce Assoc., Inc.,* 527 A.2d 306 (D.C.1987).