BAHR, Plaintiff-Appellant, v. GALONSKI, Defendant-Respondent.

*No. 76-376. Argued September 6, 1977.—Decided October 4, 1977.*
(Also reported in 257 N. W. 2d 869.)

74

For the appellant there was a brief and oral argument by *Gary L. Bahr,* pro se.

For the respondent there was a brief by *Paul L. Jonjak* and *Jonjak, Havens & Kase* of Sturgeon Bay, and *William A. J. Drengler* and *Herrling, Swain, Drengler & McCanna* of Appleton, with oral argument by *Paul L. Jonjak.*

CONNOR T. HANSEN, J.  Gary L. Bahr and Melanie Lou Bahr, now Melanie Bahr Galonski, were divorced in Oregon in 1969. Melanie was awarded custody of their, children: Trenton, born in 1964, and Stephanie, born in 1969.

Later, both parents returned to Wisconsin where Gary L. Bahr commenced proceedings to have custody of the children transferred to him. On November 14, 1974, the Outagamie county court denied his petition for a change of custody, and he appealed. On appeal, this court vacated the order of the county court for failure to appoint a guardian *ad litem* for the minor children in the custody proceeding. *Bahr v. Bahr,* 72 Wis.2d 145, 240 N.W.2d 162 (1976).[1]  The cause was remanded to the county court where, on August 5, 1976, Gary was awarded custody of the children. Melanie was allowed visitation rights of one weekend each month.

On October 20, 1976, Melanie filed a motion for (1) an increase in her visitation rights, and (2) other relief not the subject of this appeal. On October 28, 1976, Gary L. Bahr, acting pro se, filed a combined motion for dismissal, motion for change of venue, and affidavit of prejudice, seeking a change of venue or dismissal of Melanie's motion, in part because of the alleged prejudice of the trial judge.

A hearing was held on October 28, 1976. No guardian *ad litem* was appointed. Although Gary received notice, he did not appear at the hearing. He now says that he

---

[1] The background of this case is set forth in greater detail in *Bahr v. Bahr, supra.*

did not appear because he expected the judge to respond to his motions first, but his motions, filed the day of the hearing, stated: "No appearance being necessary or proper." At the hearing, the court heard Melanie's testimony in support of her request that visitation be increased to three weekends each month.

On November 1, 1976, the court entered its order increasing Melanie's visitation rights to two weekends per month and five consecutive weeks of her choice each summer. In addition, the court found ". . . that all of Gary Lee Bahr's requests, motions, and petitions regarding this hearing are without merit," thereby effectively denying the motion for a change of venue. Gary appeals from this order.

Shortly after entry of the order, Gary testified at a hearing before the Wisconsin Judicial Commission and made certain accusations concerning the conduct of the trial judge.

On February 10, 1977, the trial court found Gary to be in contempt of court for noncompliance with the visitation order. He was assessed a fine of $250.00.

On June 24, 1977, Gary was again found to be in contempt for noncompliance with the November 1, 1976, order, and was fined $100. Gary allegedly continued to disregard the order, and on July 22, 1977, an order to show cause was entered as to why Gary should not again be held in contempt; why he should not be required to surrender the children for summer visitation; why a hearing should not be set to review the question of custody; and why custody should not be transferred to Melanie pending such a hearing.

This court granted a stay of the hearing on the order to show cause, pending disposition of this appeal. Additional facts will be set forth in the consideration of the issues which we deem to be:

1. May a family court modify visitation rights subsequent to a custody award, absent evidence of a change of circumstances and without making findings of fact?

2. Must a guardian *ad litem* be appointed to represent minor children affected by proceedings for a change in visitation rights?

3. Must a change of venue be granted for the convenience of the parties when an affidavit of prejudice [request for substitution of judge] is filed in a proceeding to modify visitation rights?

4. Has the presiding judge demonstrated prejudice which requires his removal or a change of venue?

### MODIFICATION OF VISITATION RIGHTS.

The August 5, 1976, order granted Melanie visitation rights on one weekend a month. This order was modified in September to provide that Gary pay the expenses of these visitations. The November 1, 1976, order, which is the subject of this appeal, granted Melanie visitation rights on two weekends a month, Thanksgiving and Christmas of 1976, and five weeks each summer. No guardian *ad litem* was appointed for the November 1, 1976, hearing and the trial court made no findings to support its order modifying the visitation rights. It is our opinion that the order accomplished a substantial modification of the rights of visitation. Also, it was a matter in which the trial judge knew that for several years the respective parents had evidenced significantly different opinions as to custody of the children and visitation rights.

Gary argues, in effect, that the trial court abused its discretion in so enlarging the visitation rights because there was no finding of a substantial change in the circumstances of the parties following the August 5, 1976, decision. He suggests we should require the same show-

ing of change of circumstances in an order modifying visitation rights as in one changing custody.

Melanie, on the other hand, argues that no change of circumstances is required and that within a reasonable time after a decision a trial court may reconsider the evidence and revise its decision accordingly. Our attention is directed to secs. 806.07(1)(h) and (2), Stats.[2]

We do not subscribe to the contention advanced by either party. Neither do we categorically equate the standard of proof required for each and every modification of visitation rights with that required for a change of custody. The rule in matters relating to change in custody has been stated to be:

> " ' ". . . in the absence of a substantial change in the premises on which the original determination was made, a modification or revision is an abuse of discretion. . . ." ' " *Goembel v. Goembel,* 60 Wis.2d 130, 133, 208 N.W.2d 416 (1973).

The authority of a trial court to establish visitation rights has long been recognized, at common law, as an integral part of its authority to award custody. *Weichman v. Weichman,* 50 Wis.2d 731, 184 N.W.2d 882 (1971). Such authority is now alluded to in the statutes. Sec. 247.015, Stats., provides that all proceedings relating to the custody of children shall comply with the requirements of ch. 822, *The Uniform Child Custody Jurisdiction Act.* Sec. 822.02(2), provides, in part:

---

[2] Sec. 806.07, Stats., provides, in part:

". . . (1) On motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

". . .

"(h) Any other reasons justifying relief from the operation of the judgment.

"(2) The motion shall be made within a reasonable time, . . ."

"*822.02 Definitions.*  As used in this act:
"*(1)* . . . .
"*(2)* 'Custody determination' means a court decision and court orders and instructions providing for the custody of a child, including visitation rights; . . ."

A modification of visitation rights ordinarily has less impact upon the welfare of a child than does a complete transfer of custody. For this reason, a change of circumstances which would not justify a transfer of custody could well support a change in visitation rights. In *Peterson v. Peterson,* 13 Wis.2d 26, 30, 108 N.W.2d 126 (1961), it was stated, ". . . No hard and fast formula has yet been devised for determining what factors will ultimately assure the future welfare of a child. . . ." This is equally true in a determination of custody as well as visitation rights. In *King v. King,* 25 Wis.2d 550, 554, 131 N.W.2d 357 (1964), it was held that custody could not be changed on a rehearing of the same facts. It seems obvious that the same rule must apply to a modification of visitation rights.

In the instant case, the decision setting visitation at one weekend a month was effective for approximately three months before it was enlarged by the November 1, 1976, order. The original decision gave full and informed consideration to the welfare of the children; it should not be modified three months later, absent some showing of change in circumstances. The moving party bears the burden of coming forward with sufficient proof of change of circumstances to permit the trial judge to make appropriate findings in support of the exercise of his discretion. Any modification of visitation rights should reflect a discernible change of circumstances.

Melanie further contends that if a showing of change in circumstances is required, there was sufficient evi-

dence presented to justify the modification of the August fifth order. The difficulty is that although the trial court recognized that the paramount concern in the determination of visitation rights must always be the best interest and welfare of the children, it made no findings in support of its decision.

The decision of a trial court in a family court matter is ordinarily entitled to great weight; *Adoption of Randolph,* 68 Wis.2d 64, 227 N.W.2d 634 (1975). In this case, a contested family law case, where no findings were made and there is no reference by the trial court to the basis for its decision, we have concluded the cause must be remanded. *Kraemer v. Kraemer,* 67 Wis.2d 319, 227 N.W.2d 61 (1975); *Cary v. Cary,* 47 Wis.2d 689, 692, 177 N.W.2d 924 (1970). From an examination of the record in the present case, it appears there may possibly be sufficient evidence to support the decision of the trial court; however, there is no way we can determine the basis for its decision.

## APPOINTMENT OF GUARDIAN AD LITEM.

No guardian *ad litem* was appointed to represent the children in the proceedings which are the subject of this appeal. Sec. 247.045, Stats. (Supreme Court Order, 50 Wis.2d vii, ix, effective July 1, 1971),[3] requires the court

---

[3] *"247.045 Guardian ad litem for minor children.* In any action for an annulment, divorce, legal separation, or otherwise affecting marriage, when the court has reason for special concern as to the future welfare of the minor children, the court shall appoint a guardian ad litem to represent such children. If a guardian ad litem is appointed, the court shall direct either or both parties to pay the fee of the guardian ad litem, the amount of which fee shall be approved by the court. In the event of indigency on the part of both parties the court, in its discretion, may direct that the fee of the guardian ad litem be paid by the county of venue."

to appoint a guardian *ad litem* to represent minor children in any action affecting marriage "when the court has reason for special concern as to the future welfare of the minor children."

This court recently traced the twenty-year development of Wisconsin law from the first mild endorsement of representation for children to the strong mandate embodied in sec. 247.045, Stats., *supra; de Montigny v. de Montigny,* 70 Wis.2d 131, 138–140, 233 N.W.2d 463 (1975). The concept was further strengthened in *de Montigny, supra,* in which this court held that, by definition, a determination of custody raises "special concern" for the children's welfare. Custody was again the question in *Bahr v. Bahr, supra,* the previous appeal in the action now before the court. On that appeal, this court unequivocally stated:

". . . The only matter at issue was the future welfare of the minor children of the divorced parents. In this situation 'it is an abuse of discretion, patently prejudicial, to fail *sua sponte* to appoint a guardian *ad litem* for the minor children.' *de Montigny, supra,* page 137." *Bahr v. Bahr, supra,* 148.

Melanie submits that the increase in visitation rights is too inconsequential to raise a "special concern." This objection misses the point of both *de Montigny, supra,* and *Bahr, supra.* While the increase in visitation from 24 days to approximately 75 days per year may itself be reason for concern, the "special concern" test is not quantitative, but qualitative. That is, the court must look to the *nature* of the interests affected, rather than their *magnitude.* Thus this court recognized in *de Montigny, supra,* 137, that the appointment of a guardian *ad litem* is discretionary when the issues are only peripherally related to the children's welfare. Representation is obligatory, however, whenever the child's welfare is put directly in issue.

■ There can be no question that the children's welfare was directly at issue in the present action. As the court below repeatedly and properly recognized, the child's welfare is the paramount concern in the determination of visitation rights. The fact that neither party requested a guardian *ad litem* is irrelevant. *Bahr v. Bahr, supra,* 148. Under the facts of this case we are of the opinion the proper exercise of judicial discretion mandated the appointment of a guardian *ad litem*. *Weichman v. Weichman, supra.*

The requirement that the children have independent representation does not in any way suggest that the parents or the trial court were unmindful of the children's welfare. Rather, it reflects the conviction that the children are best served by the presence of a vigorous advocate free to investigate, consult with them at length, marshal evidence, and to subpoena and cross-examine witnesses. The judge cannot play this role. Properly understood, therefore, the guardian *ad litem* does not usurp the judge's function; he aids it. As this court recognized in *de Montigny, supra,* 142:

"Where the most important parties to the proceedings were wholly without their own representation, adequate fact finding and enlightened and informed decision making are impossible. . . ."

■ Melanie argues that any requirement for a guardian *ad litem* was satisfied by the court's appointment of a guardian in earlier custody proceedings and by the submission of the guardian's report in July of 1976. This argument is not persuasive, particularly when she urges that circumstances had changed substantially after August fifth. Moreover, a guardian *ad litem* is more than a nominal representative; he is an active advocate,

the attorney for the children. *de Montigny, supra,* 138, 141. This requires more than a report from the previous hearing.

Finally, Melanie says that representation for the child has never been held mandatory in proceedings concerning visitation. She is correct, and we do not here hold that it is mandatory in all proceedings to modify visitation rights.[4] However, in a case such as the present one, we are of the opinion that the proper exercise of judicial discretion required the appointment of a guardian *ad litem.*

## CHANGE OF VENUE.

The order of November 1, 1976, effectively denied the motion for a change of venue when it found that the appellant's ". . . motions . . . regarding this hearing are without merit." Gary Bahr appeals from this denial.

An order relating to venue is not itself appealable. *Grage v. Wisconsin Area Health & Welfare Fund,* 60 Wis.2d 761, 211 N.W.2d 509 (1973). Such an order is reviewable, however, on appeal from a subsequent final judgment. *Will v. H & SS Department,* 44 Wis.2d 507, 520, 521, 171 N.W.2d 378 (1969). Here, the court's decision on the intermediate question of venue is incorporated in the order determining the ultimate substantive issue of visitation. The order is thus a final determination of the rights of the parties and tantamount to a final judgment. *See: State v. Donohue,* 11 Wis.2d 517, 105 N.W.2d 844 (1960). Because this is an appeal from what is, in substance the final judgment in this action, the question of venue is reviewable.

---

[4] In *Weichman v. Weichman, supra,* this court remanded the action and said that a guardian *ad litem* "should" be appointed for the question of visitation.

Gary Bahr argues that venue should be transferred from Outagamie county because the children now reside with him in Dane county, because the mother now resides in Baraboo in Sauk county, and because the teachers, social workers, doctors and county agencies most familiar with the children's development are in Dane county.

The custody proceedings were properly commenced in Outagamie county, where the children then resided.[5] Even if that county had been objectionable, the change of venue was not requested until long after the statutory period for a change as of right.[6] Any request for a change at this date must, therefore, be addressed to the trial court's discretion. The test on review is whether that discretion has been abused. *Hoppe v. State,* 74 Wis.2d 107, 110, 246 N.W.2d 122 (1976); *Challoner v. Boyington,* 86 Wis. 217, 56 N.W. 640 (1893). The convenience of the parties might now be served by a transfer. However, in view of the trial judge's accumulated knowledge of the parents, the children and the case, and in view of the mother's continued intermittent presence in Outagamie county at the time the motion was denied, the denial does not constitute an abuse of discretion.

Next, Gary appeals from the court's refusal to honor his affidavit of prejudice. While this issue involves

[5] Sec. 247.05(4), Stats., provides in revelant part: ". . . an independent action for custody may be commenced in any county of this state in which the child is present. . . ."

[6] Sec. 801.53, Stats., provides in part: ". . . When the county designated in the complaint is not the proper place of trial, except as to actions named in s. 801.50(1), the defendant may, within 20 days after the service of the complaint, serve upon the plaintiff a demand in writing that the trial be had within a proper county, specifying the county or counties, and the reason therefor. . . ."

venue, it is distinct from the questions whether the action was properly commenced in Outagamie county and whether the convenience of the parties requires a different venue. Refusal to honor an affidavit of prejudice is reviewable on appeal from a final order entered in the same proceeding. *Luedtke v. Luedtke,* 29 Wis.2d 567, 572, 139 N.W.2d 553 (1966).

The parties do not raise the point, but this issue is controlled by the rule that an affidavit of prejudice will not lie in a proceeding to modify a divorce judgment with respect to alimony, custody or minor children. In *Luedtke v. Luedtke, supra,* the court reaffirmed this long-accepted interpretation of sec. 261.08, Stats. 1965,[7] and earlier statutes regarding disqualification of judges.

Section 261.08, Stats., has now been replaced by sec. 801.58, concerning substitution of judges. The holding in *Luedtke, supra,* was not based on any specific language in sec. 261.08, however. Indeed, neither that section nor the current provision mentions divorce actions. Rather, as the court said in *Luedtke,* the rule rests on long-standing case law and sound public policy. Applications to modify any aspect of a divorce judgment, and particularly the custody of children or parental visitation rights, are more satisfactorily disposed of by the trial court in view of its contact with the parties throughout the litigation. *Sang v. Sang,* 240 Wis. 288, 296, 3 N.W.2d 340 (1942) ; *Luedtke v. Luedtke, supra.*

---

[7] Section 261.08, Stats. 1965, provided in part:
". . . Upon the application of any party, who files his affidavit, that he has good reason to, and does believe, that he cannot have a fair trial on account of the prejudice of the judge, naming him, the court shall request the chief justice of the supreme court or other designated justice to call some other judge to attend and hold court during the current or next term for the purpose of exercising jurisdiction in all actions and proceedings in which applications for change of the place of trial have been made for such reason. . . ."

In the present case, of course, the Outagamie county court did not conduct the proceedings for the judgment of divorce, which was awarded in Oregon. For more than four years, however, the trial court has heard various proceedings to transfer custody and to alter the respective rights of the parents. As in *Sang v. Sang, supra,* the proceeding involved in this appeal was commenced to modify the court's earlier custody decision. The reasoning of *Sang* and *Luedtke* is fully applicable, therefore, and the affidavit of prejudice or request for substitution of judge was properly denied.

Furthermore, his request for a substitution of judge was not timely. Under sec. 801.58, Stats., a request for substitution of a judge must be filed by the date of entry of the scheduling order.[8] In the present action, there was no scheduling order. Nonetheless, it is the statutory intent that the affidavit be filed before the court reaches the substantive issues. Thus, the request comes too late when it is filed after a hearing on a motion implicating the merits, *Pure Milk Products Coop. v. NFO,* 64 Wis.2d 241, 219 N.W.2d 564 (1974), or on a retrial. *State ex rel. Nichols v. Circuit Court,* 189 Wis. 629, 208 N.W. 490 (1926).

Here, Gary has participated in extended proceedings on the merits, including the 1976 proceedings which awarded him custody. He did not file his affidavit of prejudice until the date set for hearing on Melanie's motion to revise that award. Even if the affidavit were not untimely under the statute, it is untimely because his par-

---

[8] Section 801.58, Stats., provides in part: ". . . (1) Any party to a civil action or proceeding may file a written request with the clerk of courts for a substitution of a new judge for the judge assigned to the trial of the case. The written request shall be filed on or before the date of entry of the scheduling order under s. 802.10(1). . . ."

ticipation in the earlier proceedings has waived any right to substitution of a judge. *See: Pure Milk Products Coop. v. NFO, supra,* 250.

### HAS PREJUDICE BEEN ESTABLISHED?

While the affidavit of prejudice was properly denied, in view of Gary's strident allegations concerning the trial judge, we direct our attention to this issue. Most of the allegations concern matters outside the record which are unsubstantiated by the present record, and, therefore cannot properly be considered.

Without setting forth these allegations in detail, we believe the evidence will not support a showing of actual prejudice. By their nature, proceedings relating to custody require a trial court to assess the character of the respective parents. A court may understandably become somewhat confident of its assessment in the course of four years of litigation. When the controversy has been long and heated, and apparently to some extent reported by the public press, and has involved proceedings of the judicial commission, it is entirely possible strong feelings might develop.

Melanie argues that if prejudice were to be found, the trial judge should be excused any prejudice because Gary deliberately provoked him, hoping to secure his removal. Calculated alienation of the trial judge, she argues, should not be rewarded by disqualification of the trial judge. It is unnecessary to reach this contention. From the record before us, it does not appear that the trial judge has formed a prejudice which would require his removal.

We do, however, observe that in the earlier custody proceedings in this case, the trial judge made use of an independent investigator unknown to the parties. This

court held in *Bahr v. Bahr, supra,* 150, that the use of the investigator and his oral report:

". . . is error, for the right of cross-examination is denied and the report does not become a part of the record of the court. *Block v. Block* (1960), 9 Wis.2d 378, 101 N.W.2d 101; *Wunsch v. Wunsch* (1945), 248 Wis. 29, 31, 20 N.W.2d 545. In discussing the holding of *Wunsch,* Konnak, in *Survey of Wisconsin Domestic Relations Law,* 1946–1953, 1954 Wis. L.R. 464, at page 490, said:
" 'This is a salutary rule and will act as a warning against the unofficial supplementation of the record by reports from social workers, psychiatrists and others directly to the court. It is not that these reports are not valuable, but when they are made copies should be supplied to counsel on both sides and an opportunity to cross-examine the person making them should be provided.' "

The admonition is clear and forceful. Nevertheless, the trial court apparently continues to consider evidence and opinions outside the record. He stated at the hearing on visitation rights:

". . . I thought about this case very, very much. I discussed it with people like perhaps, Sharon Wood [of the office of the family court commissioner]. I discussed it with my wife. I discussed it with anybody who I thought could help me to make up my mind."

At Melanie's request, the court advised that it would refrain from speaking informally with the parties. On this appeal, both parties complain of the judge's tendency to look beyond the record of the case. There is no allegation, however, that informal communications exerted any particular influence upon the order now on appeal.

It also appears the trial judge made certain comments to the public press concerning this longstanding dispute. We therefore deem it appropriate to invite attention to

two provisions of the *Code of Judicial Ethics,* 36 Wis.2d 252 (1967). Standard 10, page 258, provides in part:

"10. A judge should always bear in mind the need of scrupulous adherence to the rules of fair play. He should not permit private interviews, arguments, briefs or communications designed to influence his decision. . . ."

and Rule 15 provides:

"15. A judge shall not, while a judicial proceeding is pending, make any comments upon its merits, or make any comment which might affect its outcome or preclude a fair trial." *Code of Judicial Ethics, supra,* 262.

The order of November 1, 1976, is reversed and the cause remanded for further proceedings consistent with this opinion. Until the further order of the trial court, the order of August 5, 1976, will remain effective. The several orders of this court staying proceedings in the trial court pending this appeal are vacated.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.