STATE of Wisconsin EX REL. Thomas L. SEROCKI, Petitioner,

v.

CIRCUIT COURT FOR CLARK COUNTY, The Honorable Jon P. Wilcox, Chief Judge, 6th Judicial District, Honorable Michael W. Brennan, Presiding Judge, Samuel T. Shelton, 6th Judicial District Court Administrator, Steven W. Hemersbach, Clark County Clerk of Circuit Court and Lois L. Kieser, Clark County Circuit Court Calendar Clerk, Respondents-Petitioners.

Supreme Court

*No. 90-0641-W. Argued April 24, 1991.—Decided June 25, 1991.*

(Also reported in 471 N.W.2d 49.)

For the respondents-petitioners the cause was argued by *David E. Hoel,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the petitioner there was a brief and oral argument by *William L. Poss,* assistant state public defender.

SHIRLEY S. ABRAHAMSON, J.   This is a review of an unpublished decision of the court of appeals

filed June 21, 1990, compelling a substitution for Michael W. Brennan, Circuit Judge for Clark County, the assigned circuit judge in petitioner Thomas Serocki's recommitment hearing under sec. 51.20(13)(g)3, Stats. 1989–90. Judge Brennan denied the petitioner's request for substitution as not timely under sec. 801.58(1), Stats. 1989–90. The court of appeals granted the petition for a supervisory writ ordering the substitution for the circuit judge and holding that sec. 801.58(1) allows for substitution upon request in a recommitment hearing under sec. 51.20(13)(g)3. We reverse the decision of the court of appeals.

The question we consider is whether an individual subject to recommitment under sec. 51.20(13)(g)3[1] may, at the recommitment hearing held before a circuit judge who presided at the original commitment proceeding or at a previous recommitment hearing, request substitution for the circuit judge pursuant to sec. 801.58(1). We conclude that the legislature intended that an individual's recommitment hearing is, in the context of a request for substitution, a continuation of the original commitment proceeding and previous recommitment hearings. We further conclude that the original commitment proceeding is a preliminary contested matter in

[1]Section 51.20(13)(g)3, Stats. 1989–90, provides in pertinent part as follows: "The county department . . . to whom the individual is committed . . . may discharge the individual at any time . . .. Upon application for extension of a commitment by the department or the county department custody of the subject, the court shall proceed under subs. (10) to (13) [of sec. 51.20]. If the court determines that the individual is a proper subject for commitment . . . it shall order judgment to that effect and continue commitment. The burden of proof is upon the county department or other person seeking commitment to establish evidence that the subject individual is in need of continued commitment."

this case for purposes of sec. 801.58(1). Accordingly we also conclude that because the petitioner's recommitment hearing in this case is before the same circuit judge who presided over the original commitment proceeding, the petitioner's request for substitution at the recommitment hearing is not timely.

The facts relating to the issue of substitution are undisputed. On September 19, 1989, Judge Brennan entered an original commitment order, committing the petitioner to the Community Board of Clark County.[2] In February 1990, a representative of the Community Board of Clark County requested the circuit court to review the petitioner's involuntary commitment, pursuant to sec. 51.20(13)(g). On the day of the hearing, March 14, 1990, the petitioner's court-appointed counsel filed a motion for substitution for Judge Brennan under sec. 801.58(1). Judge Brennan denied the motion.

We agree with the parties and the court of appeals that sec. 801.58(1), the statute governing substitution of judges, applies to recommitment hearings under sec. 51.20(13)(g)3[3] and that resolution of the dispute in this case turns on the interpretation of these two statutes.

---

[2]The petitioner had been involuntarily committed or recommitted several times between 1971 and 1989. Judge Brennan presided at each of these hearings. The petitioner apparently was not under any commitment order or in custody from September 9, 1988, until September 18, 1989. Thus the September 1989 commitment proceeding is an original commitment proceeding.

[3]Section 51.20, Stats. 1989–90, incorporates by reference sec. 801.58, Stats. 1989–90. Section 51.20(10)(c) provides that in recommitment hearings "except as otherwise provided in this chapter, the rules of evidence in civil actions and s. 801.01(2) apply to any judicial proceeding or hearing under this chapter." Sec. 801.01(2) provides that "[c]hapters 801 to 847 govern procedure and practice in circuit courts of this state in all civil actions . . ." The substitution statute, sec. 801.58, is part of chapter 801.

155

Section 801.58(1) sets forth the procedure for requesting substitution of a new circuit judge in a civil action, including the time for filing the request. Section 801.58(1), Stats. 1989–90 provides in relevant part:

> Any party to a civil action or proceeding may file a written request . . . with the clerk of courts for a substitution of a new judge for the judge assigned to the case. The written request shall be filed preceding the hearing of any preliminary contested matters . . . If a new judge is assigned to the trial of a case, a request for substitution must be made within 10 days of receipt of notice of assignment . . ..

The respondents assert that in this case the recommitment hearing is a continuation of the original commitment proceeding, and not a new proceeding, and that a request for substitution of a new circuit judge is not timely when the recommitment hearing is before the same circuit judge who presided at the original commitment proceeding. The time for requesting substitution in this case, according to the respondents, was when the circuit judge sat at the first preliminary contested matter, and that event occurred in this case when the circuit judge sat at the original commitment proceeding.

The phrase "preliminary contested matters" is not defined in the statutes. The phrase has been interpreted to include matters in which "evidence is received which goes to the merits of the case." *Threlfall v. Town of Muscoda,* 152 Wis. 2d 308, 311, 448 N.W.2d 274 (Ct. App. 1989). This interpretation is consistent with the policy of the substitution statute. The legislative intent is that substitution be requested before the circuit court reaches a substantive issue. *State ex rel. Tarney v. McCormack,* 99 Wis. 2d 220, 234, 298 N.W.2d 552 (1980). A party may not "test the waters" with a particular circuit judge before requesting substitution. *State ex*

*rel. Carkel, Inc. v. Lincoln Cir. Ct.,* 141 Wis. 2d 257, 265, 414 N.W.2d 640 (1987).[4]

The respondents thus argue that because the recommitment hearing is a continuation of the original commitment proceeding in this case, the original commitment proceeding was the "preliminary contested matter" in this recommitment hearing. The original commitment proceeding is a preliminary contested matter, assert the respondents, because the circuit judge was required at that proceeding to make a determination of the merits based on evidence presented to the circuit court. Section 51.20(10)(c), (13)(e), Stats. 1989-90.

The respondents rest their argument that a recommitment hearing is a continuation of the original commitment proceeding by examining the purpose of the recommitment hearing and the language of sec. 51.20(13)(g)3. According to the respondents, the recommitment hearing is part of a legislative scheme to provide *continuing* mental health services that will benefit the individual while also protecting his or her rights. The respondents point to the language of sec. 51.20(13)(g)3, to support their argument. The statute refers to recommitment as a *continuation* of the original commitment proceeding. The department applies for an *extension* of commitment. The court orders judgment to

---

[4]A substitution request may not be made after trial of the action has begun. *Pure Milk Products Coop. v. National Farmers Organization,* 64 Wis. 2d 241, 246, 219 N.W.2d 564 (1974), citing *Swineford v. Pomeroy,* 16 Wis. 575 (*553) (1863). The rationale for this rule is that "a litigant who does not like the way a judge is handling a matter should not be able to substitute a second judge simply because the litigant believes things are going badly before the first judge and hopes to obtain a more favorable tribunal." *State ex rel. Carkel, Inc. v. Lincoln Cir. Ct.,* 141 Wis. 2d 257, 265, 414 N.W.2d 640 (1987).

*continue* commitment. The burden of proof is on the department to establish evidence that the subject is in need of *continued* commitment.

In contrast, the petitioner argues that a recommitment hearing is a new proceeding, unrelated to the original commitment proceeding or any previous recommitment hearing. Each hearing is, asserts the petitioner, a final and complete determination whether the individual is a proper subject for commitment at that time; the focus of the proceeding is on the mental condition of the individual at the time of the hearing. The fact-finder must determine whether the individual is a proper subject for commitment by clear and convincing evidence presented to the court at the time of each recommitment hearing. Each recommitment hearing therefore represents, according to the petitioner, an entirely new determination of the case on the merits.

Under the petitioner's theory, since the recommitment hearing is an entirely new case, the timeliness of the request in this case under sec. 801.58(1) depends on whether the circuit court heard any "preliminary contested matters" prior to the March 14 recommitment hearing at which the petitioner filed his request for substitution. The petitioner argues that the circuit court heard no preliminary contested matter in this case. The question to be determined at the March 14 hearing was whether the petitioner was then a proper subject for commitment. No evidence relating to that determination was ever previously presented to the circuit court. Accordingly the petitioner contends that the circuit court heard no "preliminary contested matters" in this case which would preclude substitution under the statute and that his substitution request is timely.[5] If the peti-

[5]The petitioner asserts that generally there are no preliminary contested matters before a recommitment hearing. The peti-

tioner is correct that the recommitment hearing is a new proceeding then we must conclude, as the petitioner concludes, that there was no preliminary contested matter and the request for substitution was timely filed in this case.

█

We agree with the petitioner that the circuit court must make a new determination of the individual's suitability for commitment at the recommitment hearing; that evidence of the individual's recent behavior will be presented; and that evidence presented at each recommitment hearing may be different from evidence presented at the original commitment proceeding or a previous recommitment hearing. These factors, however, do not, as the petitioner urges, transform the recommitment hearing into an entirely new proceeding. As the court of appeals explained in *In Matter of M.J.,* 122 Wis. 2d 525, 530-31, 362 N.W.2d 190 (Ct. App. 1984), the circuit court may consider the individual's present condition and past response to treatment to decide whether the individual is then a proper subject for continued commitment:

> A patient's commitment may be extended, under sec. 51.20(13)(g)3, Stats., if the patient continues to be mentally ill and a proper subject for treatment and meets one of the criteria of sec. 51.20(1)(a)2 or 51.20(1)(am). Sec. 51.20(1)(am) provides that in a proceeding to extend a patient's commitment, the

---

tioner concedes that a hearing on a motion for discovery may be a preliminary contested matter within sec. 801.58(1) in a recommitment hearing. No such motion was made in this case. The petitioner's example of a preliminary contested matter, in the context of substitution of judges, under the Mental Health Act is a probable cause hearing under sec. 51.20(7). There is no probable cause hearing in a recommitment hearing.

requirements of sec. 51.20(1)(a)2 that the acts or omissions relied on must be *recent* behavior may be satisfied by showing that there is a substantial likelihood, based on the patient's treatment record, that he or she would be a proper subject for commitment if treatment were discontinued. The purpose of this provision is to allow extension of a commitment when the patient's condition has not improved enough to warrant discharge.

This description of the purpose of the recommitment hearing and the evidence to be presented support the respondent's argument that at the recommitment hearing the circuit court continues to receive evidence in the same case. We are persuaded that the legislature intended an individual's recommitment hearing to be, in the context of a request for substitution, a continuation of the original commitment proceeding and previous recommitment hearings.

Furthermore, none of the exceptions in sec. 801.58 to the general rule that substitution must be made before any preliminary contested matters applies in this case.

Section 801.58(1) expressly allows a motion for substitution when a new circuit judge is assigned to the trial of a case. In this case, a new circuit judge is not involved; the judge is the same circuit judge who presided over the original commitment proceeding. If a circuit judge who did not preside over the original commitment proceeding, or a previous recommitment hearing, is to preside over a recommitment hearing, a request for substitution may be timely and substitution appropriate. The respondents agree, for example, that the petitioner in this case would have been entitled to substitution of the circuit judge prior to the original commitment proceeding in September, 1989. Furthermore, sec. 801.58(7) expressly

160

allows substitution after appeal, even though each party had the opportunity to exercise his or her right of substitution at the outset of the case. In this case we do not have a proceeding after appeal.

The respondents urge us to extend the *Bacon-Bahr* rule to recommitment hearings. The *Bacon-Bahr* line of cases holds that sec. 801.58 governing substitution of judges is "inapplicable to certain proceedings to modify divorce judgments." *State ex rel. Parrish v. Kenosha County Circuit Ct.,* 148 Wis. 2d 700, 703, 436 N.W.2d 608 (1989).[6] The *Bacon-Bahr* cases are based on "longstanding case law and sound public policy" in divorce law. *Bahr v. Galonski,* 80 Wis. 2d 72, 86, 257 N.W.2d 869 (1977). In this case the substitution statute applies, and we need not turn to case law developed in another area of law to determine the right of substitution.

To summarize, we conclude that the legislature intended that an individual's recommitment hearing is, in the context of a request for substitution, a continuation of the original commitment proceeding and previous recommitment hearings. We further conclude that the original commitment proceeding is a preliminary contested matter in this case for purposes of sec. 801.58(1). Accordingly we also conclude that because the petitioner's recommitment hearing in this case is before the same circuit judge who presided over the original commitment proceeding, the petitioner's request for substitution at the recommitment hearing is not timely.

For the reasons set forth, we reverse the order of the court of appeals granting the petition for a supervisory

---

[6]*See, Bacon v. Bacon,* 34 Wis. 594 (1874); *Hopkins v. Hopkins,* 40 Wis. 462 (1876); *Sang v. Sang,* 240 Wis. 288, 3 N.W.2d 340 (1942); *Luedtke v. Luedtke,* 29 Wis. 2d 567, 139 N.W.2d 553 (1966); *Bahr v. Galonski,* 80 Wis. 2d 72, 257 N.W.2d 869 (1977).

writ and remand the cause to the circuit court for Clark county for further proceedings consistent with this opinion.

*By the Court.*—The order of the court of appeals is reversed and cause remanded.

CALLOW, WILLIAM G., J. (concurring). I concur with the majority and write to emphasize the need for chief judges to require the original commitment judge to hear the case at any subsequent recommitment hearings. Circuit court judges are periodically rotated among different circuit court branches *(e.g.,* family branch, juvenile branch, criminal branch). Section 51.20(13)(g)3, Stats., provides for a hearing when an application for extension is filed. Inevitably, cases will arise where the original committing judge has been transferred from the probate branch into another branch of the circuit court. In these cases, the chief judge should endeavor to assign the recommitment hearing to the judge who ordered the original commitment (even if he or she has been transferred to another branch). The committing judge originally addressed the substantive issue, and if he or she also hears the recommitment proceeding, this avoids the problems inherent in a request for a substitution of judges. *(See* majority opinion at 160.)

I am authorized to state that Justices Roland B. Day, Donald W. Steinmetz and William A. Bablitch join in this concurring opinion.

LOUIS J. CECI, J. (concurring). I concur in the result of the opinion but must write separately to express my concern with respect to the judge-shopping which is practiced under the present judicial substitution law.

Nowhere in the federal judiciary are defendants permitted to file requests for substitution, because federal

162

judges are sworn to uphold the Constitution of the United States. All members of the Wisconsin judiciary take the same oath, yet substitution on demand is practiced routinely for the purpose of avoiding judges who are sworn to be fair and who in practice are conscientious, impartial, and fair. This insult to the integrity of the Wisconsin judiciary standing alone is of no consequence; however, it has had and is having a devastating effect, in my view, on the administration of justice.[1] Judge-shopping makes the system work less well, is extremely costly, and is, therefore, clearly not in the public interest.

Substitution frustrates the ability of the judiciary to effect an efficient judicial rotation system. It also can deprive a one-judge county of the services of the duly elected judge by prohibiting such judge from hearing cases at the exclusive option of a defendant in a criminal case and any party in a civil case.

Article VII, sec. 3 of the Wisconsin Constitution[2] vests in the supreme court superintending and administrative authority over the judiciary of this state. I believe it is time that this court end this unwarranted, costly, and unnecessary legislative interference with the orderly administration of justice.

I am authorized to state that Justice William G. Callow joins in this concurring opinion.

---

[1] In calendar year 1990, a total of 7,326 substitution requests were filed.

[2] Wis. Const. art. VII, sec. 3(1) provides as follows: "**Supreme court: jurisdiction.** Section 3. *[As amended April 1977]* (1) The supreme court shall have superintending and administrative authority over all courts."