COURT OF APPEALS
DECISION
DATED AND FILED

March 7, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP1975**

Cir. Ct. No.  **2022ME98**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

IN THE MATTER OF THE CONDITION OF D.P.W.O.:

PORTAGE COUNTY,

    PETITIONER-RESPONDENT,

 V.

D.P.W.O.,

    RESPONDENT-APPELLANT.

        APPEAL from orders of the circuit court for Portage County: LOUIS J. MOLEPSKE, JR., Judge. *Affirmed*.

        ¶1    NASHOLD, J.[1] D.P.W.O. appeals an order extending his involuntary commitment under WIS. STAT. ch. 51 and an associated order making

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version.

him subject to involuntary medication and treatment. D.P.W.O. argues that these orders must be reversed because the circuit court committed plain error by relying on unobjected-to hearsay in determining that D.P.W.O. was dangerous. For the reasons below, I reject D.P.W.O.'s argument and affirm.

## BACKGROUND

¶2 It is undisputed for purposes of this appeal that D.P.W.O. is mentally ill, specifically, that he has a schizoaffective disorder, among other disorders. In September 2022, the County commenced involuntary commitment proceedings under WIS. STAT. ch. 51 based in part on allegations that D.P.W.O. caused fire hazards by leaving lit cigarettes around his home, repeatedly left his home "in his underwear and walk[ed] barefoot in cold weather" and talked about "killing people." D.P.W.O. stipulated to the initial six-month commitment and to an involuntary medication and treatment order, and he was ultimately placed in an outpatient facility.

¶3 In March 2023, the County petitioned to extend D.P.W.O.'s commitment for an additional year. To prevail in a WIS. STAT. ch. 51 recommitment[2] proceeding, a county must prove, by clear and convincing evidence, that the subject individual is: (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous under one of five statutory dangerousness standards set forth in WIS. STAT. § 51.20(1)(a)2.a.-e. *Portage Cnty. v. J.W.K.*, 2019 WI 54, ¶18, 386 Wis. 2d 672, 927 N.W.2d 509; § 51.20(1)(a), (13)(e).

---

[2] WISCONSIN STAT. § 51.20, as well as courts discussing that statute, use the terms "recommitment" and "extension of a commitment" interchangeably. *See Portage Cnty. v. J.W.K.*, 2019 WI 54, ¶18, 386 Wis. 2d 672, 927 N.W.2d 509.

¶4      At the recommitment hearing, the County introduced the testimony of psychiatrist Dr. Bababo Opaneye.   The County also moved Opaneye's examiner's report into evidence.

¶5      Opaneye testified to the following.  Opaneye personally examined D.P.W.O. and reviewed his treatment records, determining that D.P.W.O. was mentally ill and that his mental illness could be treated with medication. D.P.W.O. was initially committed after a welfare check in September 2023.  At that time, D.P.W.O. had stopped taking his medication and was consistently "leaving cigarette butts on the furniture at home."  There were also multiple incidents, occurring both before and after D.P.W.O.'s initial commitment, in which D.P.W.O. "walk[ed] out in the cold inappropriately dressed."  If D.P.W.O.'s treatment were withdrawn, D.P.W.O. would "become dangerous" due to "behavior … related to his psychosis."

¶6      Opaneye's report recounts some of the same events as his testimony, stating that D.P.W.O. "poses danger to self by walking exposed and inappropriately dressed in very cold weather condition[s] and constituting a fire hazard by leaving burning cigarette butts all over his apartment."

¶7      On cross-examination, Dr. Opaneye admitted that he had no personal knowledge of D.P.W.O. leaving lit cigarettes around his home or walking out into cold weather inappropriately dressed, and that instead, his knowledge of these incidents came from his review of treatment records.  D.P.W.O.'s trial counsel did not object to the admission of Opaneye's testimony, or to the admission of Opaneye's report.

¶8      The circuit court granted the County's recommitment petition.  The court determined that "if treatment were withdrawn, [D.P.W.O.] would be [a]

proper subject for commitment again, thus he's considered dangerous under the statute." The court went on to make an "additional finding" that D.P.W.O. is dangerous "to himself" based on the evidence that D.P.W.O. "went out into the cold without proper clothing" and caused a fire hazard by leaving "lit cigarettes around his home."

¶9 The court issued an order extending D.P.W.O.'s commitment for twelve months, ending on March 10, 2023, as well as an order for involuntary medication and treatment.

## DISCUSSION

¶10 To prevail in a WIS. STAT. ch. 51 recommitment proceeding, a county must prove, among other things, that the subject individual is dangerous under one of the five statutory standards set forth in WIS. STAT. § 51.20(1)(a)2.a.-e. *J.W.K.*, 386 Wis. 2d 672, ¶18; § 51.20(1)(a). The pertinent standard here is the first, § 51.20(1)(a)2.a., which requires the county to show that the individual evidences a "substantial probability of physical harm to himself or herself, as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm."

¶11 In an initial commitment proceeding, the county must prove dangerousness by reference to "recent acts or omissions." *J.W.K.*, 386 Wis. 2d 672, ¶17; *see also* WIS. STAT. § 51.20(1)(a)2. In recommitment proceedings, however, the county need not identify recent acts or omissions; instead, it may rely on the "alternative evidentiary path" of § 51.20(1)(am). *J.W.K.*, 386 Wis. 2d 672, ¶19. Under § 51.20(1)(am), the county may satisfy its burden "by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were

withdrawn." This provision "recognizes that an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior, but if treatment were withdrawn, there may be a substantial likelihood such behavior would recur." *J.W.K.*, 386 Wis. 2d 672, ¶19. Nevertheless, § 51.20(1)(am) "mandates that circuit courts ground their [dangerousness] conclusions" in one of the five statutory standards set forth in § 51.20(1)(a)2.a.-e. *Langlade Cnty. v. D.J.W.*, 2020 WI 41, ¶41, 391 Wis. 2d 231, 942 N.W.2d 277.

¶12 D.P.W.O.'s sole argument on appeal is that the circuit court erred by relying on hearsay evidence to conclude that D.P.W.O. was dangerous. Before addressing this argument, I pause to address a separate issue implicated in the parties' briefing pertaining to the applicable statutory dangerousness standard.

### I. Statutory Dangerousness Standards

¶13 The County argues that, to show dangerousness in a recommitment proceeding, it need only satisfy "the alternative recommitment standard for dangerousness in WIS. STAT. § 51.20(1)(am)," rather than one of the five statutory standards set forth in § 51.20(1)(a)2.a.-e. Essentially, the County contends that § 51.20(1)(am) is a sixth dangerousness standard available in recommitments. The circuit court appears to have applied that same understanding at times, stating that D.P.W.O. was "dangerous under the statute" because "if treatment were withdrawn, [D.P.W.O.] would be [a] proper subject for commitment again," echoing the language of § 51.20(1)(am).

¶14 As explained above, however, WIS. STAT. § 51.20(1)(am) is not a dangerousness standard; rather, it is an alternative evidentiary path by which one of the five dangerousness standards may be met, permitting a county to prove

dangerousness with evidence that the dangerous behavior would recur if treatment were withdrawn. Our supreme court has repeatedly made this point clear. *See J.W.K.*, 386 Wis. 2d 672, ¶19; *D.J.W.*, 391 Wis. 2d 231, ¶41. In fact, the requirement that the circuit court ground its dangerousness conclusions in one of the five dangerousness standards is so crucial that our supreme court has directed circuit courts in recommitments to "make specific factual findings with reference to the [dangerousness] subdivision paragraph of § 51.20(1)(a)2. on which the recommitment is based." *D.J.W.*, 391 Wis. 2d 231, ¶40. This directive is meant to ensure that individuals receive procedural protections that "mirror the serious nature of the proceeding" and "to ensure that recommitments are based on sufficient evidence." *Id.*, ¶43.

¶15 Although D.P.W.O. critiques the County's and the circuit court's reasoning, he does not contend that the circuit court violated the directive set forth in *D.J.W.*, and instead appears to concede that the court satisfied this directive by making factual findings that reference the first statutory dangerousness standard.[3] Accordingly, I address this issue no further.

---

[3] As noted above, after stating that D.P.W.O. was dangerous under WIS. STAT. § 51.20(1)(am), the circuit court made an "additional finding" that D.P.W.O. was dangerous "to himself" based on evidence that D.P.W.O. went out "in[to] the cold without proper clothing" and "left lit cigarettes around his home." D.P.W.O. appears to concede that the court was referring to the first dangerousness standard, which requires the county to show that the subject individual evidences a "substantial probability of physical harm to himself or herself, as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm." Sec. 51.20(1)(a)2.a.

Relatedly, D.P.W.O. contends that confusion about the statutory dangerousness standards may have resulted from the poor organization of the standard commitment form order, which "allows the court to mix and match the type of harm and type of proof." Because this issue is unrelated to any relief D.P.W.O. seeks in this appeal, I do not address it beyond noting that circuit courts and practitioners should not rely on form orders for determining their obligations under WIS. STAT. ch. 51 law.

## II. Plain Error

¶16   D.P.W.O.'s sole argument on appeal is that the circuit court erred by relying on hearsay evidence to conclude that D.P.W.O. was dangerous.  D.P.W.O. contends that Dr. Opaneye's testimony and report include accounts of events that Opaneye had no personal knowledge of and knew only through review of D.P.W.O.'s treatment records—specifically, that D.P.W.O. went out into the cold inappropriately dressed and caused a fire hazard by leaving lit cigarettes around his home.  Thus, D.P.W.O. argues that Opaneye's account of these events is inadmissible hearsay.  *See* WIS. STAT. § 908.01(3) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); WIS. STAT. § 908.02 (hearsay is inadmissible unless an exception applies).  D.P.W.O. acknowledges that trial counsel made no hearsay objection, but D.P.W.O. contends that the court's reliance on this hearsay evidence was plain error entitling him to relief even absent an objection.  The County does not contest that the challenged evidence is hearsay, but argues that D.P.W.O. forfeited his hearsay objection and that the plain error doctrine should not apply.

¶17   A party forfeits a challenge to admissibility of evidence by failing to object in proceedings before the circuit court.  *See **State v. Edwards***, 2002 WI App 66, ¶9, 251 Wis. 2d 651, 642 N.W.2d 537; ***State v. Ndina***, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612.  Appellate courts do not normally address forfeited issues.  *Ndina*, 315 Wis. 2d 653, ¶30.  The forfeiture rule "gives both parties and the circuit court notice of the issue and a fair opportunity to address the objection; encourages attorneys to diligently prepare for and conduct trials; and prevents attorneys from 'sandbagging' opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal." ***Id.***

¶18    However, under the plain error doctrine, an appellate court may review evidentiary errors that were not objected to below. *State v. Jorgensen*, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77; *see also* WIS. STAT. § 901.03(4) ("Nothing in this rule [about the effect of erroneous evidentiary rulings] precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge."). "To qualify for this doctrine's application, however, the error must be obvious and substantial[,]" and "so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time." *State v. Bell*, 2018 WI 28, ¶12, 380 Wis. 2d 616, 909 N.W.2d 750 (alteration in *Bell*; internal quotation marks and quoted source omitted).

¶19    "Courts should use the plain error doctrine sparingly," and it may be appropriate when "'a basic constitutional right has not been extended to the accused.'" *Jorgensen*, 310 Wis. 2d 138, ¶21 (quoted source omitted). If the party claiming plain error "shows that the unobjected-to error is fundamental, obvious, and substantial," the burden shifts to the beneficiary of the error "to show the error was harmless." *Id.*, ¶23.

¶20    For the reasons that follow, I conclude that D.P.W.O. has not shown that the circuit court's reliance on the challenged hearsay evidence was fundamental, obvious, and substantial error.

¶21    First, I note that D.P.W.O. cites no case in which mere admission of hearsay, unaccompanied by other more compelling errors, constituted plain error.[4]

---

[4] Wisconsin courts have consistently rejected arguments that admission of hearsay rises to the level of plain error, even in criminal cases, where hearsay often implicates a criminal defendant's constitutional right to confront witnesses. *See State v. Sorenson*, 152 Wis. 2d 471,

(continued)

The dearth of any such authority is not surprising. As explained above, courts apply the plain error doctrine sparingly and only under compelling circumstances. As any legal practitioner knows, admission of hearsay evidence is far from unusual. *Cf., e.g.*, **State v. Torpy**, 52 Wis. 2d 101, 109, 187 N.W.2d 858 (1971) ("Hearsay evidence is admissible and may be considered by the trier of the fact unless timely objection is made …."). Nor is hearsay necessarily prejudicial—in fact, there are often strategic advantages to permitting the admission of hearsay. "Hearsay usually is weaker than live testimony, and defendants may prefer the hearsay version rather than making an objection that would compel the prosecution to produce a stronger witness." **United States v. Moon**, 512 F.3d 359, 361 (7th Cir. 2008). That attorneys may make the strategic choice to permit admission of hearsay evidence makes it "problematic" to accept a plain error argument challenging the admission of hearsay. *See id.* (rejecting the defendant's

---

497, 449 N.W.2d 280 (Ct. App. 1989) ("Defendant cites no case holding that hearsay evidence or evidence violating the right to confrontation is plain error. The case law establishes that a defendant loses the right to raise the confrontation issue by failing to object at trial."); *see also* **State v. Nelson**, 138 Wis. 2d 418, 446, 406 N.W.2d 385 (1987) (admission of unobjected-to hearsay drawings in criminal proceeding was not plain error).

D.P.W.O. cites **State v. Jorgensen**, 2008 WI 60, 310 Wis. 2d 138, 754 N.W.2d 77, for his assertion that it is "plain error to admit statements that trial counsel could have objected to on hearsay grounds." However, **Jorgensen** does not support this premise. In that case, our supreme court invoked the plain error doctrine when the circuit court and prosecutor committed a series of errors, *id.*, ¶¶20-53, one of which was the court's reading of a transcript of a prior hearing at which both the judge and the prosecutor commented on the defendant's apparent intoxication, *id.*, ¶¶2-11. The **Jorgensen** court noted that the reading of this transcript resulted in "[t]he admission of inadmissible hearsay," among numerous other errors. *Id.*, ¶28. However, the **Jorgensen** court's plain error determination was not based on the hearsay issue, but rather on the fact that the repeated errors throughout the proceeding, including use of the transcript, denied the defendant his constitutional due process and confrontation rights. *Id.*, ¶¶33-44. **Jorgensen** placed particular weight on the fact that circuit court's active participation in reading the transcript made it appear that the "inadmissible evidence" was "cloaked with the judge's approval." *Id.*, ¶38. Thus, **Jorgensen** does not suggest that mere admission of hearsay is plain error; at most, it suggests that admission of hearsay may contribute to a plain error determination when accompanied by more compelling errors.

argument that the admission of hearsay in a criminal proceeding was plain error, and noting that is "problematic to entertain" a plain error argument when accepting hearsay may have been advantageous to the defendant).

¶22 Such concerns are implicated here. The County represents that "at least one social worker who had worked directly with D.P.W.O. was present" at the hearing and was prepared to testify if necessary.[5] Under the circumstances, had D.P.W.O.'s trial counsel chosen to object to admission of hearsay, such objection could have led the County to call another witness to offer stronger evidence, which would have been contrary to D.P.W.O.'s interests. Where, as here, the lack of a hearsay objection may have resulted in a strategic advantage, any error is far from "obvious," weighing against a conclusion that the error was fundamental, obvious, and substantial.

¶23 Second, the hearsay evidence that D.P.W.O. challenges is cumulative of other evidence introduced earlier in the commitment proceedings. At the probable cause hearing prior to D.P.W.O.'s initial commitment, D.P.W.O.'s father gave firsthand testimony of D.P.W.O. creating a fire hazard with lit cigarettes. At the initial commitment hearing, D.P.W.O. stipulated to the admission of examiners' reports containing accounts of D.P.W.O. leaving lit cigarettes on furniture and going out inappropriately dressed for the weather. These hearings were before the same judge as the recommitment hearing. "[A] recommitment hearing is not 'an entirely new proceeding,'" and "the 'circuit court continues to receive evidence in the same case.'" *J.W.K.*, 386 Wis. 2d 672, ¶26

---

[5] D.P.W.O. does not challenge the County's assertion, and I deem it conceded. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (a party's failure to refute an argument may be taken as a concession).

(quoting *State ex rel. Serocki v. Circuit Ct. for Clark Cnty.*, 163 Wis. 2d 152, 159-60, 471 N.W.2d 49 (1991)). I do not here determine that a circuit court may, in a recommitment hearing, consider evidence admitted at previous hearings even where not reintroduced; rather, I conclude only that, because the challenged hearsay evidence was cumulative of evidence that had already been admitted in the same case before the same judge, this weighs against a conclusion that the error was fundamental, obvious, and substantial.

¶24 Third, D.P.W.O. identifies no constitutional right implicated by the circuit court's reliance on the hearsay. *See Jorgensen*, 310 Wis. 2d 138, ¶21 ("Wisconsin courts have consistently used [a] constitutional error standard in determining whether to invoke the plain error rule.") (internal quotation marks and quoted source omitted). As D.P.W.O. concedes, the Sixth Amendment's confrontation clause, which guarantees criminal defendants the right to confront the witnesses against them, does not apply because a commitment is a civil proceeding.[6] *See* U.S. CONST. amend. VI. Nevertheless, D.P.W.O. argues that there are "constitutional aspects" to the error. D.P.W.O. points to *Lessard v. Schmidt*, 349 F. Supp. 1078, 1103 (E.D. Wis. 1972), *vacated on other grounds*, 414 U.S. 473 (1974), in which the federal court concluded that the predecessor to the current WIS. STAT. ch. 51 was unconstitutional in several ways. D.P.W.O. argues that, under *Lessard*, "commitments cannot be based on hearsay evidence." However, D.P.W.O. overstates *Lessard*'s conclusions.

---

[6] D.P.W.O. contends that "[t]he right to confrontation is also one of the bundle of rights guaranteed by the Due Process clause, applicable when the Confrontation Clause may not be." To the contrary, we have concluded that, in civil proceedings, and specifically in proceedings under WIS. STAT. ch. 51, "no independent right to confront witnesses exists under the Wisconsin and United States Constitutions." *W.J.C. v. County of Vilas*, 124 Wis. 2d 238, 240, 369 N.W.2d 162 (Ct. App. 1985).

¶25    Among the problems that ***Lessard*** identified with Wisconsin's prior involuntary commitment statutes was that "rules of evidence generally applicable to other proceedings in which an individual's liberty is in jeopardy" did not apply, and the county could therefore rely on hearsay evidence to support the commitment. ***Id.*** at 1102-03. The ***Lessard*** court stated that adherence to the rules of evidence was required due to "the seriousness of the deprivation of liberty and the consequences which follow an adjudication of mental illness." ***Id.*** at 1103. Thus, ***Lessard*** struck down Wisconsin's prior commitment statutes in part because individuals were not granted the same procedural right to object to hearsay granted in other contexts, such as criminal proceedings. By contrast, the statutes under which D.P.W.O. was committed granted him that right. *See* WIS. STAT. § 51.20(10)(c) (the rules of evidence generally apply in involuntary commitment proceedings). That D.P.W.O. failed to exercise the procedural rights available to him does not render his recommitment proceeding constitutionally infirm.

¶26    Not only does D.P.WO. fail to identify any constitutional right implicated by the circuit court's reliance on the hearsay at issue, but D.P.W.O. identifies no way in which this hearsay evidence is particularly notable or unusual. In fact, evidence drawn from treatment records is expressly contemplated in WIS. STAT. § 51.20(1)(am), which provides that, in a recommitment proceeding, dangerousness can be analyzed "based on the subject individual's treatment record." If reliance on the hearsay in this case constitutes plain error, then it is difficult to envision a scenario in which the admission of hearsay in a WIS. STAT. ch. 51 proceeding is *not* plain error. As noted above, courts apply the plain error doctrine only sparingly, and generally do not address forfeited issues, in order to encourage diligence below and to discourage sandbagging. *See **Jorgensen***, 310 Wis. 2d 138, ¶21; ***Ndina***, 315 Wis. 2d 653, ¶30. To apply the plain error here

12

would be to ignore the strong policy reasons in favor of forfeiture rule and to suggest that plain error is the rule, rather the exception, in ch. 51 proceedings.

¶27    Finally, I address D.P.W.O.'s argument that plain error review is appropriate in WIS. STAT. ch. 51 proceedings due to practical concerns. D.P.W.O. contends that "the compressed timelines" in ch. 51 proceedings "make it impractical to assert that the failure to object to an evidentiary error amounts to the ineffective assistance of counsel." *See **Winnebago Cnty. v. J.M.***, 2018 WI 37, ¶35, 381 Wis. 2d 28, 911 N.W.2d 41 (individuals subject to ch. 51 proceedings have a statutory right to effective assistance of counsel and may bring an ineffective assistance of counsel claim). D.P.W.O. notes that, because each commitment order is independent of the preceding order and may last no longer than one year, "to experience any real relief from an appeal," a challenge to a commitment order "must resolve within that one year," after which time the order has either expired or the county has prevailed in a subsequent, independent recommitment hearing. *See **J.W.K.***, 386 Wis. 2d 672, ¶1. D.P.W.O. suggests that, because an ineffective assistance of counsel claim must be brought before the circuit court via a postdispositional motion, it is impossible to obtain a decision on an ineffective assistance of counsel claim within a year, precluding meaningful relief.

¶28    D.P.W.O. fails to explain how these practical concerns relate to the applicable legal standard, that is, whether the error was "fundamental, substantial, and obvious" such that reversal is required despite the failure to object. Setting that aside, D.P.W.O. cites no authority for the proposition that it would be impossible to obtain a decision on an ineffective assistance of counsel claim within a year. Circuit courts are fully able to decide a post-dispositional motion within that time frame. *See, e.g.*, ***State v. Romero-Georgana***, 2014 WI 83, ¶¶13,

17, 360 Wis. 2d 522, 849 N.W.2d 668 (defendant was convicted in January 2007, and the circuit court ruled on his postconviction motion after a hearing in August 2007). D.P.W.O. acknowledges that significant delay may come, not from the court, but from "the delay in appointing counsel," noting that the state public defender's office, which has represented D.P.W.O. throughout these proceedings, did not appoint appellate counsel for him until nearly four months after the recommitment hearing. D.P.W.O.'s counsel did not file a notice of appeal until October 20, 2023, over seven months after the recommitment hearing. Due primarily to this initial delay, briefing did not close in this appeal until February 26, 2024, less than two weeks before the expiration of the challenged recommitment order. I recognize that the state public defender's office may be unable to appoint postdisposition counsel promptly in all cases, through no fault of its clients. However, contrary to D.P.W.O's suggestion, that does not mean that the state public defender's clients should be entitled to plain error review in lieu of an ineffective assistance of counsel claim.

¶29 In sum, D.P.W.O. has not shown that the circuit court's reliance on hearsay evidence was a "fundamental, substantial, and obvious" error requiring reversal despite the lack of an objection from trial counsel.

## CONCLUSION

¶30 For all of these reasons, I affirm the circuit court's order extending D.P.W.O.'s commitment and order for involuntary medication and treatment.[7]

---

[7] D.P.W.O. makes no separate challenge to the involuntary medication order, arguing only that, absent the commitment order, there is "no basis for the involuntary medication order, and that order should be reversed as well." Accordingly, because I affirm the recommitment order, I likewise affirm the order for involuntary medication and treatment.

14

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.